OPINION
{¶ 1} Appellant Daniel Kaiser appeals the decision of the Columbiana County Common Pleas Court, Juvenile Division, which denied his motion to terminate the visitation rights previously granted to his son's maternal grandparents. The issues before us concern whether the trial court properly found the father to be an unfit parent, whether the court found a compelling government interest to justify interfering with the father's custody, whether the court cited an inapplicable appellate case, whether the court properly found that the grandparents were sufficiently protective of the child's safety, and whether the same standard applies to termination of an existing order as would apply to the granting of a new order of grandparents' visitation. For the following reasons, the judgment of the trial court is reversed and this case is remanded.
 STATEMENT OF THE CASE {¶ 2} The child at issue, Daniel A. Kaiser, was born on April 12, 1996 in Germany, where his father was stationed. The child's mother died the next day due to childbirth complications. When the father returned to Salem, Ohio with his infant son, his wife's parents, appellees herein, petitioned the court for grandparents' visitation rights. A consent decree was journalized on October 18, 1996, giving the grandparents visitation for one hour on five or six weekdays per month at the father's residence and for nine hours every other Saturday at the grandparent's residence or elsewhere.
 {¶ 3} In September 1997, the grandparents moved for increased visitation time. They desired overnight visits and more time during the week, holidays, and summer. The court granted the request for overnight visits, allowing the grandparents to visit with the child every other weekend for twenty-four hours. However, the weekday visitation was not extended; rather, it was discontinued.
 {¶ 4} On December 17, 2002, the father filed a motion to terminate the grandparents' visitation rights and refused to allow the court-ordered visitation to continue. Thus, the grandparents filed a motion for contempt. The father also filed a motion for relief from the prior consent judgment; however, the court found that this was not made within a reasonable time as required by Civ. R. 60(B).
 {¶ 5} Hearings were held on August 18, 2003 and October 3, 2003. At the latter hearing, the court held appellant in contempt and found that he could avoid a thirty-day jail sentence by complying with the prior visitation order. On December 23, 2003, the court denied appellant's motion to terminate the grandparents' visitation rights.
 {¶ 6} The court found that the child is well-bonded with his grandparents as well as with his father, step-mother, and three half-siblings. The court noted that the father believed that the grandparents failed to adequately provide for the child's safety. However, the court found that some of the disagreements occurred many years before and that the grandparents immediately gave due consideration to all of the father's complaints. The court concluded that the grandparents are duly concerned with the safety, protection, and monitoring of the child.
 {¶ 7} The court pointed out that both counselors recommended that visitation should not be wholly terminated. The court opined that considering the father's testimony and demeanor, it is unlikely he would allow regular contact if the court terminated its visitation order.
 {¶ 8} The court also stated that the father demonstrated no meritorious reason or change of circumstances to modify the prior order of visitation. The court found it to be in the child's best interests that visitation and telephone contact continue as ordered in 1997. In making these observations, the court concluded that the father's motives for filing the termination motion were adverse to the child's best interests and "[t]herefore, the Court declines to conclude or find without exception that the father, Dan Kaiser, is a fit parent of the child."
 {¶ 9} The court determined that there was a difference (as to both standard of review and practical impact) between a court initially imposing grandparents' visitation rights and the termination of a long-standing order containing such rights. The court found the case similar to a case out of the Third Appellate District. The court advised that strict scrutiny must be applied but concluded that there was a compelling government interest in protecting the rights of the child and the child's emotional best interests.
 {¶ 10} The father filed timely notice of appeal of this order. At the same time, he asked to appeal the August 22, 2003 denial of his motion for relief from the October 1996 consent judgment; however, we held that he failed to timely appeal such order. Thus, this appeal concerns only the court's December 23, 2003 denial of the father's motion to terminate the grandparents' visitation rights.
 LAW ON GRANDPARENT'S VISITATION {¶ 11} Pursuant to R.C. 3109.11, grandparents and other relatives of a deceased person can file a complaint requesting reasonable visitation with the child of that deceased person. We note that separate statutes apply where grandparents are seeking visitation for reasons other than the death of their child. See R.C. 3109.051(B) (allowing visitation by any interested person in cases of divorce) and R.C. 3109.12 (allowing relative visitation in cases where the mother is unmarried).
 {¶ 12} Upon the filing of this complaint requesting visitation, the court may grant such visitation if the court determines that it is in the best interests of the child. R.C. 3109.11. In evaluating the child's best interests, R.C. 3109.11 directs the court to consider all relevant factors, including, but not limited to, the factors set forth in R.C. 3109.051(D).
 {¶ 13} Likewise, R.C. 3109.051(D), provides that the factors within it are to be used to determine: whether to grant parenting time to a parent or visitation rights to a grandparent, relative, or other person pursuant to this statute, R.C. 3109.11 or 3109.12; a specific parenting time or visitation schedule; and other parenting time matters or visitation matters under this statute, R.C. 3109.11 or 3109.12.
 {¶ 14} The best interests factors include the following: (1) the child's prior interaction and interrelationships with parents, siblings, and other persons related by consanguinity or affinity; (2) the geographical location of the relevant residences and the distance between them; (3) the available time, including, but not limited to, each parent's employment schedule, the child's school schedule and the child's and the parents' holiday and vacation schedule; (4) the child's age; (5) the child's adjustment to home, school and community; (6) the child's wishes and concerns as expressed to the court, if the court interviewed the child in chambers; (7) the child's health and safety; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) willingness to reschedule missed visitation; (11) and (12) concerns of abuse or neglect; (13) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time; (14) whether either parent has established a residence or is planning to establish a residence outside this state; (15) in relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court; and (16) any other factor in the best interest of the child. R.C. 3109.051(D).
 {¶ 15} As is often the case, the foregoing statute does not stand in isolation. It must be read and interpreted in conjunction with other factors derived from case law to protect against infringement upon an individual's constitutional rights. Accordingly, we turn our attention to a parent's constitutional rights and their coexistence with the statutory privilege of a grandparent to visitation with their grandchild. At the outset, we note that a fit parent is presumed to act in their child's best interests. As such, the wishes and concerns of the child's parents about visitation by a grandparent must be elevated above other factors, which are otherwise afforded equal weight. Oliver v. Feldner,149 Ohio App.3d 114, 2002-Ohio-3209, at ¶ 20, 56, citing Troxel v.Granville (2000), 530 U.S. 57. The court must thus afford "special weight" to the fifteenth factor in a case where the court is deciding whether to impose a non-parent visitation order on a parent. Id. at ¶ 56. "Special weight" has been described as "extreme deference." Id. at ¶ 59. Thus, rather than conducting a typical balancing test, the scale must begin with the parent's wishes in a weighty position.
 {¶ 16} Because the right to parent one's child is a fundamental right and because fundamental rights are protected by a strict scrutiny analysis, the extreme deference to the parent's wishes can only be overcome by a compelling government interest and overwhelmingly clear circumstances supporting narrowly tailored government interference. Id. at ¶ 40, 54, 59. Some compelling government interests for grandparent visitation are: (1) to protect a child from physical or mental harm; (2) a parens patriae interest in preserving a child's welfare where that child is dependent, abused, neglected, or has an unfit parent; and (3) where the grandparents have acted as de facto parents. Id. at ¶ 60-61. We note that a court need not find a parent unfit in order to consider grandparents' visitation rights; unfitness is just one option.
 {¶ 17} In our Oliver case, the father and mother were not married, and the father died. The paternal grandparents sought visitation. The mother objected on the grounds that their house aggravated her son's asthma and because the grandparents blame her for their son's death. The trial court rejected these reasons and granted visitation. This court reversed and remanded for an articulation of the specific factors supporting a best interests finding and with orders that the trial court afford due deference to the mother's decision as required by Troxel. Oliver v.Feldner (Jan. 25, 2001), 7th Dist. No. 271.
 {¶ 18} On remand, the trial court held no additional hearing, ruled that grandparents' visitation was in the child's best interests, stated it should give special weight to the mother's decision but rejected her wishes. The case was once again appealed to this court, and in OliverII, we reversed the grandparents' visitation order without remanding.Oliver v. Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209.
 {¶ 19} This court opined that a grandparent's desire for the child to know the deceased parent's side of the family is not a compelling reason to interfere with a parent's right to control with whom the child comes in contact. Id. at ¶ 65. We noted language in Troxel that the decision on whether intergenerational relationships should exist is primarily and fundamentally that of the parent. Id. at ¶ 70. We also stated that the court is not to presume that visitation with grandparents is in the child's best interests because this is the province of the parent and their fundamental right to raise their child as they see fit. Id. at ¶ 67. Finally, this court concluded that the trial court should not have discredited the mother's safety and health concerns without giving them special weight, and we held that the trial court inappropriately substituted its judgment for that of the parent on the issue of the child's best interests. Id. at ¶ 68, 70.
 {¶ 20} We shall now turn to the arguments raised by the father's appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 21} The father's first assignment of error provides:
 {¶ 22} "The trial court's finding that appellant is not a fit parent, without exception, is against the manifest weight of the evidence and violates the appellant's constitutional rights under the due process clause of the Fourteenth Amendment to the United States Constitution."
 {¶ 23} The father takes issue with the trial court's statement in paragraph 17 of the judgment entry, which reads as follows:
 {¶ 24} "The Court having found no meritorious reason for modifications of the previously ordered grandparents' visitation, and that continuation of visitation is in the child's best interest, the Court also finds the father's motivations for filing his Motion to be adverse to the best interest of his child. Therefore, the Court declines to conclude or find without exception that the father, Dan Kaiser, is a fit parent of the child."
 {¶ 25} The father notes that the guardian ad litem opined that he was fit, the grandfather testified that he was a good father, and no one testified or alleged that he was unfit. He argues that the court's decision that he was not fit was erroneous and unsupported by the record.
 {¶ 26} As aforementioned, the significance of a fit parent is that a fit parent has a fundamental right to control and care for his own child and is presumed to act in his child's best interests; however, these rights and presumptions do not apply to an unfit parent. Different standards apply to fit and unfit parents. As we also noted above when setting forth the law, a compelling government interest for grandparents' visitation is readily established in cases where the parent is not fit. Our Oliver holdings with their strict standards for visitation, which necessarily include the United States Supreme Court's Troxel holding, are less applicable to an unfit parent.
 {¶ 27} Although the trial court made many different conclusions, as if trying to cover all possible bases, the court erred by implying that the father was not a fit parent. The trial court's only reason for declining to find the father fit was that he filed what the court believed to be an unsupported motion for termination of the grandparents' visitation. A father cannot be held to be unfit merely because he attempts to exercise his fundamental parental right explained by the United States Supreme Court in Troxel. A father cannot be declared unfit based upon the sole reason that he seeks to eliminate court-ordered grandparents' visitation rights that interfere with his own custody of his son.
 {¶ 28} The father had some concerns about his child's safety and the grandparents' sound decision-making abilities. For instance, it is undisputed that the grandparents illegally transported the child in their van by strapping him into a lawn chair which was supposedly stabilized with a bag of concrete mix. Apparently, twin infants were using the only two seats with restraints. The testimony of the father's wife was that she had previously complained to the grandparents about a complete failure to restrain the child during transportation after she saw the child arrive home sitting in the grandmother's lap. Moreover, the father was concerned about his six-year-old son's story about using the bathroom alone at the movie theater. The father was also upset that the grandfather had recently blamed the death of the child's mother on him (out of the presence of the child) and may have advised the child that he will be rich when he is older due to his mother's death.
 {¶ 29} Even assuming merely for the sake of argument that the father's accusations were incorrect and his motivations were wholly selfish for seeking to terminate the grandparents' visitation, this would not make him an unfit parent. There were absolutely no allegations that he was unfit. In fact, the grandparents admitted that he was a good father. We note that if the father is unfit, the grandparents could get much more than visitation; they could get custody or the father's parental rights could be terminated. An unfit parent is one who is unsuitable to raise a child, such as in the case where the parents grew marijuana in their house and brought their child with them on drug deals, requiring him to sit on a garbage bag full of marijuana during the drive. See In re Rayl,
7th Dist. No. 00BA55, 2002-Ohio-5176.
 {¶ 30} As aforementioned, the trial court stated many reasons for its findings, and this was only one. A finding of unfitness is not necessary to grant or maintain grandparents' visitation, and in fact, it is a fairly rare circumstance in a visitation case. We acknowledge that although the court found the father was unfit, the court still found that it was required to apply a strict scrutiny standard and stated that the father's wishes on visitation should be given great deference. Judgment Entry ¶ 21. Thus, the grandparents argue that the court's suggestion concerning fitness was not prejudicial. However, when dealing with such a fundamental right, it is difficult to rely on other findings of the court in the face of its erroneous statement that it declined to find the father fit.
 {¶ 31} In fact, one of the alternative reasons given by the court suggests another possible misinterpretation of the law. In paragraph fifteen, the court found that the father "demonstrated no meritorious reason or change of circumstances to exclude the grandparents from the child's life by modification of the prior visitation orders."
 {¶ 32} Change in circumstances is the statutory test for modifyingparental rights and responsibilities (previously called custody) made under a prior divorce decree. See R.C. 3109.04(E)(1)(a). Moreover, R.C. 3109.051(B)(2) provides that a grandparents' visitation motion may be filed after a divorce decree if it was not filed during the pendency of the divorce proceedings or was filed "and the circumstances changed." Both of those statutes deal with divorce proceedings.
 {¶ 33} Nothing in the relevant grandparents' visitation statute of R.C. 3109.11, dealing with cases of the death of a parent, mentions changed circumstances. In fact, while a change of circumstances is important in a request or a change of custody, it generally is not a requirement for modifying visitation, even between parents. Braatz v.Braatz (1999), 85 Ohio St.3d 40, 45; Venuto v. Pochiro, 7th Dist. No. 02CA225, 2004-Ohio-2631, at ¶ 80. Rather, the best interest factors in R.C. 3109.051(D) are the considerations involved in modifying such visitation. Id.
 {¶ 34} The trial court may believe that similar circumstances, or a lack of changed circumstances, from the time of a consent decree exist. This belief could fall under the catch-all factor in R.C. 3109.04(D)(16) (any other factor dealing with best interests). Or, it could be a mere observation that the grandparents' protection abilities are no different than when he consented to visitation. However, change in circumstances is not some burden to be placed upon the father in cases such as this. Although it may not have been the court's intent to place some changed circumstance burden on the father, we cannot be sure based upon the court's language.
 {¶ 35} Besides the comment on fitness and changed circumstances, the trial court made other statements that could imply utilization of an improper legal standard in this case. This leads to a discussion of the father's third and fifth assignments of error.
 ASSIGNMENTS OF ERROR NUMBER THREE AND FIVE {¶ 36} The father's third and fifth assignments of error contend:
 {¶ 37} "The trial court's reliance upon Buehrer v. Lambert [3d. Dist. No. 7-02-03, 2002-Ohio-2980] is misplaced."
 {¶ 38} "The same constitutional standard which applies to new orders also applies to existing orders."
 {¶ 39} These assignments of error are addressed together because it appears the trial court relied upon a statement in Buehrer to support its conclusion that the same legal standard does not apply to motions to terminate grandparent visitation as applies to motions to establish grandparent visitation. See Buehrer v. Lambert, 3d Dist. No. 7-02-03, 2002-Ohio-2980.
 {¶ 40} In Buehrer, the grandparents filed a complaint for visitation, and then, an agreement was journalized whereby the mother agreed to allow the paternal grandparents supervised visitation. After Troxel was decided by the United States Supreme Court, the mother filed a motion to terminate visitation on the grounds that the prior statute, upon which the grandparents' original complaint was based, was unconstitutional because it did not require sufficient consideration of her wishes. The magistrate disagreed, no objections were filed, and the trial court independently reviewed and adopted the magistrate's decision.
 {¶ 41} In responding to the mother's argument about the original complaint being based upon an invalid statute, the Third District noted that the visitation order was based upon a consent decree not a statute. Id. at ¶ 6. The court explained that the sole issue was whether visitation should be terminated, not whether visitation should have originally been granted. Id. The court then stated that the decision on whether visitation should be terminated requires consideration of the child's best interests with special weight being given to the mother's wishes as required by Troxel. Id. at ¶ 8. The court concluded that the trial court did not abuse its discretion because the evidence supported that visitation is in the child's best interests and because the mother failed to object to the magistrate's decision. Id.
 {¶ 42} Here, the trial court opined that the issues and circumstances of this case are very similar to those addressed in Buehrer. As the father notes, he did not waive his appellate arguments due to a failure to file objections as did the mother in Buehrer.
 {¶ 43} Yet, the father argues that the consent agreement was unenforceable, but the original visitation order is not before us. As inBuehrer, only the issue of whether visitation should be terminated is at issue. If this was the comparison the trial court was trying to make, then there is no problem.
 {¶ 44} However, it seems the trial court was saying more than that the original consent decree was not subject to review. It seems the court was citing Buehrer for the proposition that there is a different test for a modification or termination of grandparents' visitation than there is for initiation of grandparents' visitation. It appears the trial court believed that the constitutional concerns expressed in Troxel and ourOliver decision were not so pressing when reviewing a grandparents' visitation order that already exists.
 {¶ 45} For instance, the trial court surrounded its Buehrer cite and comment with the following remarks:
 {¶ 46} "Recent state and federal review of grandparent visitation disputes has involved whether a court may intervene to impose or initiate grandparents' visitation. This is not a case of initiation or new creation of grandparent visitation, but rather a determination of whether a significant and long-standing order of visitation and relationship between grandparents and a child may be terminated at the mere election of a parent. * * *
 {¶ 47} "There is a difference between the Court initially imposing visitation by grandparents over the objections of the parent and the termination of a long-standing order and relationship between the child and grandparents. The difference is both as to standards of legal review and as to the practical impact upon the parent and child." Judgment Entry at ¶ 19.
 {¶ 48} As the father argues in his fifth assignment of error, the constitutional standards, or as the trial court states, "standards of legal review," are not different for reviewing a motion for termination of grandparents' visitation as they are for reviewing an original complaint for establishment of grandparents' visitation. In both cases, the parents' fundamental right of exclusive control over their child is at stake. In both cases, the best interests of the child are the statutory test. See R.C. 3109.051(C).
 {¶ 49} As previously explained, one of these best interest factors particularly relevant in a grandparents' visitation case is the parent's wishes or concerns. R.C. 3109.051 (D)(15). Troxel advised that this factor is to be given "special weight" or "extreme deference." We applied this to mean that the R.C. 3109.051(D) best interests factors applied, but instead of giving all factors equal weight as in a typical visitation case, the fifteenth factor (being the parent's wishes and concerns) is to be weighed much more heavily. Nothing indicates that we only give special weight to this factor when reviewing an initial complaint for visitation.
 {¶ 50} In fact, the trial court herein contradictorily admitted that parents are generally given great deference in their choice of whom their child will visit. Judgment Entry at ¶ 21. Although the court admitted this, its above-quoted statements about different legal standards of review, are a cause for concern, especially when combined with the statement that the father is an unfit parent or that he failed to show a change in circumstances.
 {¶ 51} It is true that the fact that the grandparents have been exercising visitation for six years can distinguish this case factually
from one where there is no prior visitation. It is also true that the court may consider this as a best interests factor under R.C. 109.051(D)(1), which allows the court to consider prior interaction of the child with the grandparents, and under (D)(16), which allows the court to consider any other factor. The court may also use the fact of regular and long-standing visitation with grandparents to evaluate the mental harm to the child in terminating visitation, which is the relevant consideration for determining a compelling government interest in this case. See Oliver v. Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209, at ¶ 60-61. Nevertheless, the actual legal standard of review under the constitution and its judicial interpretation is not different. This topic may also relate to portions of the analysis under the next assignment of error.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 52} The father's second assignment of error alleges:
 {¶ 53} "The trial court's order is unconstitutional, pursuant to the due process clause of theFourteenth Amendment to the United States Constitution, because there is no compelling governmental interest to justify interfering with the appellant's care, custody and control of his child.
 {¶ 54} As stated in our review of the pertinent law, one of the possible compelling government interests in granting grandparents visitation is to protect the child from physical and mental harm. Id. at ¶ 60-61. The father claims that his constitutional rights were violated because no testimony showed that the child would suffer harm from termination of visitation.
 {¶ 55} The father points to the guardian ad litem's testimony that there would not necessarily be any harm to the child in "contracting" the grandparents' visitation rights. However, contracting does not mean terminating. In fact, the guardian ad litem continued, "I would like to see this child have some regular contact with his maternal grandparents. Whatever the court may see fit as a schedule, as far as frequency goes, just so that there is some regular contact between them." (Tr. 15).
 {¶ 56} The father then points to the testimony of his expert. This counselor stated that it did not appear that the child suffered any harm from the termination of visitation, which the father had unilaterally imposed for many months. (Tr. 67). First, we note that it is fairly disingenuous to violate a court order on visitation (resulting in a finding of contempt) in order to hire an expert and then pronounce to the court whose order you violated, "See, my child was not harmed by termination." We also note that this counselor concluded by admitting that although he did not believe that termination had so far detrimentally affected the child, he believed the child should be allowed to visit his grandparents. (Tr. 106). Moreover, as the court noted, this counselor was unaware that the father was seeking to totally terminate visitation when he interviewed the child and prepared his report. (Tr. 84).
 {¶ 57} Further, the expert presented by the grandparents concluded that the child would suffer mental harm. In fact, he opined that termination of visitation would be like two more deaths in his life that is already confused by the death of his mother just after his birth. (Tr. 123). This expert testified that the child had been harmed by termination of visitation. (Tr. 121).
 {¶ 58} Whether there exists a compelling government interest to continue interfering with the father's parental rights depends on the testimony and circumstances in each case. We cannot review the court's factual determination and application of law to the facts at hand because the court's legal standards were flawed. Relevant to this assignment, the closest the trial court came to finding a compelling government interest due to actual mental harm was when it stated in the twentieth paragraph that the government had a compelling interest in preserving the relationship and contact to protect the child's emotional best interests. The court did not specify that this child would suffer mental harm in the absence of visitation. Since the court stated that the father was not fit, it may have never even reached this alternative issue. This omission in combination with the concerns expressed above requires remand of this case for application of the proper standards.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 59} The father's fourth assignment of error provides:
 {¶ 60} "The trial court's finding, that the grandparents have become concerned with the safety, protection and monitoring of the child, is against the manifest weight of the evidence."
 {¶ 61} On appeal, the father relies on three incidents: (1) his wife witnessing the child riding in a van in the passenger seat on the grandmother's lap in April 2002; (2) the transportation of the child strapped into a lawn chair placed in the back of the grandparents' van in June 2002; and (3) the child's experience of going to the bathroom in a movie theater by himself in November 2002, even though his grandparents were aware that he was not permitted to do so. Before the trial court, appellant raised other concerns such as the grandfather blaming the mother's death on the father and the grandfather's statements to the child about coming into money.
 {¶ 62} The grandparents deny the first incident. They explained the third incident by revealing that the grandfather followed the child through the lobby and watched him enter the bathroom without the child's knowledge so he proudly thought he went to the bathroom by himself. They deny that they sat in the theater while the child walked through the lobby to the bathroom unsupervised. The grandparents admit the second incident, stating that twin infants were using the only two seatbelts and they were having problems with their other car.
 {¶ 63} The father takes issue with the following passage in the court's judgment entry:
 {¶ 64} "The Court finds, upon review of all of the testimony, that the grandparents have been duly concerned with the safety, protection and monitoring of the child. When the father objected to the grandparents of any incidents of concern the grandparents immediately gave due consideration and respect to the concerns and directions of the father in regard to the grandparent's contact with the child." Judgment Entry at ¶ 12.
 {¶ 65} The father concludes that these conclusions are against the weight of the evidence and constitute an abuse of discretion. Based upon the observations made in the assignments of error above, we need not delve into the proprieties of this assignment. Because we are remanding for application of the proper standards and for the court to ensure special weight and extreme deference is given to the father's wishes, evaluation of this assignment is unnecessary at this time. In other words, due to the potential problems with the legal standards applied by the trial court, the application of the correct law to the facts is not ripe for review at this point.
 CONCLUSION {¶ 66} For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded. On remand, the trial court shall hold an additional, supplemental hearing to discuss best interests and mental harm involved and to update the information on the child's routine and any new best interests factors such as elementary school. See R.C. 3109.051(D)(3). If the court formulates any new order, the trial court should not address the fitness of the father since the record is clear and devoid of any possible grounds to question the fitness of the father. Further, the trial court shall not place any burden on the father to show a change in circumstances as this is not the test for termination of visitation herein. The trial court shall recognize that there are not different legal standards terminating grandparents' visitation as there are for initiating it, as the same constitutional tests apply. On remand, the trial court shall also determine if there is a compelling government interest such as mental harm to the child upon termination of visitation; as aforementioned, given the facts of this case, unfitness shall not be considered as a compelling government interest. Finally, the court shall apply, note, and cite all of the relevant best interests factors, such as diminished time the child spends with his three halfsiblings under the eighth factor. In doing so, the court must remember that the analysis begins with a tipped scale due to the special weight and extreme deference to be given to the father's wishes and safety concerns under the fifteenth factor set forth in R.C. 3109.051(D).
Waite, P.J., concurs.
Donofrio, J., concurs.