[Cite as *In re A.H.*, 2016-Ohio-1257.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE:                   :

                            :    Appellate Case No. 26832

     A.H. and H.H.       :

                            :    Trial Court Case Nos. JC 2014-6468
                            :                  JC 2014-6469

                            :

                            :    (Juvenile Appeal from
                            :     Common Pleas Court)

                            :

                            :

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2016.

. . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. No. 0003191, and AMY R. BLAIR, Atty. Reg. No. 0073760, Rogers & Greenberg LLP, 40 North Main Street, Suite 2160, Dayton, Ohio 45423
     Attorneys for Appellants

TOM O. MERRITT, Atty. Reg. No. 0066661, 818 West Main Street, Tipp City, Ohio 45371
     Attorney for Appellee

. . . . . . . . . . . .

FAIN, J.

    **{¶ 1}** Petitioners-appellants (hereinafter grandparents) appeal from an order of the Montgomery County Court of Common Pleas, Juvenile Division, providing for grandparents' visitation with the minor children A.H. and H.H. The grandparents contend

that since the juvenile court judge agreed with the findings of fact and the application of law set forth by the magistrate, the judge abused his discretion by modifying the magistrate's decision.

{¶ 2} We conclude that the juvenile court did not abuse its discretion in its visitation order. Accordingly, the order of the juvenile court from which this appeal is taken is Affirmed.

## I. The Relationships Between the Parties

{¶ 3} B.H. is the father of two minor children, A.H., who was born in 2007, and H.H., who was born in 2011. On March 11, 2014, L.H., who was B.H.'s wife and the mother of both children, passed away unexpectedly. Prior to L.H.'s death, the grandparents enjoyed visitation with the children three to four times a week, with overnight visits at least two times per month. Following L.H.'s death, the grandparents visited with the children one evening per week and had one overnight visit each weekend. The grandparents also took the children on a five-day out of state vacation to visit family. The grandparents also helped take care of the children while B.H. was at work. In September 2014, B.H. terminated the contact between the children and the grandparents.

## II. Course of the Proceedings

{¶ 4} The grandparents filed a complaint for grandparent visitation rights. A Guardian ad Litem was appointed to represent the interest of the children. The GAL filed a report recommending that the grandparents "be allowed to step into [the deceased mother's] place as to all provisions of the Standard Order of Parenting Time." The report stated that A.H. expressed the desire to have visitation with the grandparents "each

weekend and a day during the week."[1]

{¶ 5} A hearing on the complaint was held, during which both grandparents and B.H. testified. According to B.H., he had concerns that the grandparents were "confused about their role" in the children's lives, and that they were failing to properly communicate with him. Specifically, B.H. was upset that A.H. sustained scraped knees during a trip to King's Island amusement park with the grandparents, and the grandparents failed to immediately inform him of the scrapes. He also objected to the fact that the grandparents took the children to a place called "Fun Zone," or "Fun Town," because he had never been there and did not know what kind of environment it presented. B.H. also was upset that someone painted A.H.'s nails, and that he was given a Barbie doll while at the grandparents' home. B.H. complained that the grandparents "encouraged" a different sense of personal space than what he thought was appropriate. On the day contact was terminated, the children were in the care of their grandparents after school. At pick-up, the pre-school teacher indicated that H.H. had not eaten. The grandmother took the child to lunch, and noted that she ate appropriately. That evening, at about 6:15 p.m., the grandmother, a family medicine doctor, checked H.H.'s temperature, which was at 101 degrees. B.H. was scheduled to pick up the children at 7:00 p.m. A few minutes after that time, noting that B.H. was late, the grandmother re-checked the temperature, which had gone up to 102 degrees. She called B.H. to inform him. She also called the child's pediatrician, to get the child in for a check-up. B.H. arrived at the grandparents' home, and took H.H. to the pediatrician. A.H. stayed with the grandparents. B.H. returned with H.H., who had a cold. B.H. was upset that he had not been called when

---

[1] H.H. was determined to be too young to express her wishes.

the pre-school indicated that H.H. had not eaten. B.H. acknowledged that the grandparents had played a significant role in the lives of both children since their births, including visitation, babysitting, and taking the kids to appointments and activities, up until contact ceased. He also acknowledged that in the six months following his wife's death, besides stopping contact with his in-laws, he re-married, moved the new family including two step-sisters, to a new home, and changed A.H.'s school.

{¶ 6} In November 2014, the grandparents requested to visit with A.H. on his birthday. B.H. informed them that they would be at a fast-food restaurant for one hour, during which time the grandparents would be permitted to visit with the children. In December, the grandparents requested overnight visitation time with the children. B.H. sent a text message to the grandparents chastising them for filing the visitation action, and stating that he was not "under any obligation to inform you of our plans or to inform you of any aspect of my children's lives or my family's life. I will provide opportunities for you to be a part of [the children's lives] when it is safe and appropriate to do so. * * * If this is the best role model you know how to be for [the children], you are truly a lost soul and I feel pitty [sic] for you. You may wish to consider these issues as I determine the safety and appropriateness of the environment you wish to offer my children this holiday season and throughout the year. Since you clearly have difficulty understanding, this message, like all others, is not a threat to remove you from [the children's] lives, but simply a reminder that involvement in the lives of [the children] is a privilege, not a right and one that you must constantly work to maintain." At the time of the hearing, the grandparents had not seen the children in over two months, except for a visit arranged by the GAL.

{¶ 7} The magistrate issued a decision awarding the grandparents visitation in

accordance with the Standard Order of Parenting Time, except that the summer vacation visitation was ordered to run for two consecutive weeks each summer, rather than alternating weeks. The magistrate stated that the GAL's recommendation was reasonable, and agreed that the "maternal grandparents should step into the deceased mother's place in the children's lives * * *." Dkt. No. 31. B.H. objected to the magistrate's order, arguing that the use of the Standard Order of Parenting Time is excessive and constitutes an abuse of discretion.

{¶ 8} The juvenile court, in reviewing the objections, found that granting visitation was in the best interest of the children, and that the decision of the magistrate was properly supported by the facts. However, the court found that "awarding the maternal grandparents the Standard Order of Parenting, and allowing them to assume the role of a parent as it relates to the standard order is excessive." Dkt. No. 5. The trial court modified the order of visitation to provide that the grandparents have weekend visitation every third weekend, and that Wednesday visitation is limited to weeks without an upcoming weekend visitation. The trial court added a separate single week to the summer vacation visitation. Finally, the trial court decreased the period of visitation to occur on holidays, and also limited visitation during the children's birthdays to times when the birthdays fell during the grandparents' regularly scheduled visitation. In all other respects, the trial court adopted the magistrate's decision.

{¶ 9} The grandparents appeal.

### III. The Trial Court's Order of Visitation Is Not an Abuse of Discretion

{¶ 10} The sole assignment of error asserted by the grandparents states:

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO

MODIFY THE VISITATION GRANTED TO GRANDPARENTS WHEN THE TRIAL COURT FOUND THAT THE MAGISTRATE PROPERLY DETERMINED THE FACTUAL ISSUES AND APPROPRIATELY APPLIED THE LAW.

{¶ 11} The grandparents contend that because the juvenile court agreed with the factual findings and application of law as set forth by the magistrate, it abused its discretion by modifying the magistrate's decision.

{¶ 12} "A grandparent's visitation rights are governed by statute. R.C. 3109.051(B)(1) authorizes a court to grant visitation if: 1) The grandparent moves the court to do so; 2) The court finds the grandparent has an interest in the welfare of the child; and 3) The court finds that visitation is in the child's best interest. The court shall be guided by sixteen factors identified in R.C. 3109.051(D) when making its findings." (Citation omitted.) *Moshos v. Moshos*, 2d Dist. Greene No. 03CA97, 2004-Ohio-4933, ¶ 8. In this case, it is clear that all the appropriate findings were made, and that those findings support an order of visitation. The issue then, is whether the juvenile court was constrained to adopt the decision of the magistrate in its entirety.

{¶ 13} A trial court "may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Civ.R. 53(E)(4)(b). This is because, as we stated in *Quick v Kwiatkowski*, 2d Dist. Montgomery No. 18620, 2001 WL 871406, *3-4 (Aug. 3, 2001):

Magistrates are neither constitutional nor statutory courts. Magistrates and their powers are wholly creatures of rules of practice and procedure promulgated by the Supreme Court. Therefore, magistrates do

not constitute a judicial tribunal independent of the court that appoints them. Instead, they are adjuncts of their appointing courts, which remain responsible to critically review and verify the work of the magistrates they appoint. Civ.R. 53(E)(4)(b) contemplates a de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function.

(Citations omitted).

{¶ 14} A review of the record indicates that the juvenile court agreed that the magistrate properly considered the best interest of the children in reaching its decision that the grandparents have been a vital part of the lives of these children, that visitation with the grandparents is in the best interest of the children, and that B.H. had no valid reason for discontinuing visitation. But the fact that the trial court agreed with these findings does not limit it with regard to its exercise of the discretion reposed in the trial court to fashion a suitable visitation order in the children's best interests. And the trial court specifically noted that it found the amount of visitation ordered by the magistrate to be excessive for a non-parent. Thus, the trial court exercised its discretion, and adjusted the visitation order accordingly.

{¶ 15} A trial court's decision on visitation involves an exercise of discretion and we review the decision for an abuse of that discretion. *Johntonny v. Malliski*, 67 Ohio App.3d 709, 714, 588 N.E.2d 200 (11th Dist. 1990). The term "abuse of discretion"

implies "that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We find no abuse of discretion in the juvenile court's order of visitation. Accordingly, the grandparents' sole assignment of error is overruled.

## IV. Conclusion

**{¶ 16}** The grandparents' sole assignment of error having been overruled, the order of the juvenile court from which this appeal is taken is Affirmed.

. . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Keith R. Kearney
Amy R. Blair
Tom O. Merritt
Hon. Anthony Capizzi