[Cite as *In re K.A.*, 2018-Ohio-3400.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

IN THE MATTER OF:           :

                            :

     K.A. & E.A.         :     Appellate Case No. 2018-CA-9

                            :

                            :     Trial Court Case Nos. 2017-JG-33,
                            :     2017-JG-34

                            :

                            :     (Appeal from Common Pleas Court,
                            :     Domestic Relations, Juvenile, Probate
                            :     Division)

. . . . . . . . . .

O P I N I O N

Rendered on the 24th day of August, 2018.

. . . . . . . . . .

JOHN C. A. JUERGENS, Atty. Reg. No. 0037120, 1504 North Limestone Street, Springfield, Ohio 45503
     Attorney for Plaintiff-Appellee

CATHY J. WEITHMAN, Atty. Reg. No. 0020889, 201 West Court Street, Urbana, Ohio 43078
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} V.A. ("Grandmother") appeals from a judgment of the Champaign County Common Pleas Court, Domestic Relations, Juvenile, Probate Division, that denied her motions for visitation with K.A. and E.A., the minor children of her deceased son. The trial court's judgment will be affirmed.

### Factual Background and Procedural History

{¶ 2} Grandmother's son died of suicide on February 28, 2017, at his home in Champaign County, Ohio. At the time of his death, his daughters K.A. and E.A. were six and two years of age, respectively. The children still reside in Champaign County with their mother, while Grandmother resides in New Castle, Indiana, about a three-hour drive away.

{¶ 3} On September 8, 2017, Grandmother filed two complaints in the trial court, one seeking visitation with K.A. and the other seeking visitation with E.A. The girls' mother ("Mother") opposed the visitation requests, asserting that Grandmother "has not exercised visitation except one time per year since the minor children's respective births," and that any visitation should be at Mother's discretion. The court issued an interim order granting Grandmother visitation during Thanksgiving weekend of 2017 at the home of M.B., another family member in Indiana, and set the matter for an evidentiary hearing.

{¶ 4} At the hearing held on January 30, 2018, Grandmother testified that she wished to have overnight visits with K.A. and E.A. "[a]t least" four times a year near holidays, extended to "three days or four at most" in the summertime, at the home of Grandmother's 81-year-old mother in Portland, Indiana. Grandmother said that her mother's home is one hour nearer to Mother's residence than her own home, and that

having visitation there would allow K.A. and E.A. to spend time with their father's extended family. She stated that she would "feel uncomfortable" visiting the girls in their home because it was the site of her son's suicide. "I don't know if I can really handle that." Instead, she proposed that she and the girls' mother "meet halfway" in Piqua, Ohio, to transfer the girls for visits with Grandmother. Although she sought overnight visits, Grandmother could not recall a time when the girls had spent a night away from their mother's house and with Grandmother's family.[1]

{¶ 5} Mother testified that her husband's suicide had been "[v]ery difficult" for K.A. and E.A., and that she also had "emotional problems" since discovering her husband's body. All three were in counseling to help cope with lingering issues. Mother said that E.A. "regressed with potty training" after her father's death and had begun "getting physically aggressive," throwing toys and screaming "I hate you." E.A. also was exhibiting separation anxiety. Although she was enrolled in daycare, that had become "very problematic." "She cries a lot," and "won't let go of me." As a result, E.A. had not been to daycare for over a month.

{¶ 6} K.A. was in kindergarten at her local school when a shooting occurred on the campus. Mother could not say which or how much of K.A.'s emotional problems stemmed from that shooting versus the suicide of K.A.'s father the following month. She said both girls "have night terrors and they wake up frequently screaming throughout the night," often crawling into bed with her. They also move from their beds to the couch during the night to be closer to Mother, "because they don't want to be far away in the house at

---

[1] The girls' visit during the Thanksgiving 2017 holiday weekend did not include an overnight stay with Grandmother.

night."

{¶ 7} Mother testified that K.A. and E.A. did not have a close relationship with their father's family before his death. She described taking the girls to Indiana only for "a big family gathering" around holidays. Mother said she did not feel that her late husband's family grasped the extent of her daughters' emotional problems, nor did she feel secure leaving K.A. and E.A. in the care of Grandmother and Grandmother's mother. She stated that she would feel "a little more comfortable" if M.B. were present during the visits, given M.B.'s training as a nurse practitioner, but would prefer to be present personally during K.A. and E.A.'s visits with Grandmother. She also would prefer to limit the visits to about four hours, twice a year, with her taking the girls to Indiana once and Grandmother coming to Champaign County on the other occasion. With a visit of eight hours or longer, "I'm concerned for their emotional well-being and panic issues." Mother continued:

> [E.A.] * * * doesn't stay away from me for that long. She's never stayed away. I don't have people keep my kids usually overnight. Even people they see every day. My kids won't even stay with my mom most of the time overnight because they don't want to leave mommy. Like, I mean, [E.A.] and [K.A.] both – I've had both of them curl up in the middle of the night with me and sleep with me at least once in the last week, both of them, at one point in time because they have issues being separated from me for so long.

{¶ 8} The girl's maternal grandmother ("M.G.") also testified at the hearing. She said that she saw K.A. and E.A. "a couple times a week." She stated that K.A. is "not doing very well" emotionally since her father's death, and that while E.A. "doesn't really understand a lot," she still "feels the emotion that is there." M.G. said that E.A. had

regressed not only in potty training, but also in speech and language. Additionally, E.A. was "acting out," "slamming things around," and "telling her mom when she gets mad that she hates her." M.G. did not often see E.A. without Mother present. "She won't stay with me because she wants to be with her mommy." As to K.A., M.G. felt that she was "confus[ed]" and didn't fully comprehend her father's death. K.A. "refuses to do what she's told to do by her mom" and "still has issues wetting the bed at night."

{¶ 9} M.G. expressed concerns about K.A. and E.A.'s going to visit Grandmother without Mother along. She said that Grandmother had been to their home town only two or three times, and not at all since E.A. was born. She worried that E.A. "doesn't know who [Grandmother] is," and that K.A. always wants to return home to Mother after only one night with M.G., even though "she knows me very well" and "stays with me frequently."

{¶ 10} On February 5, 2018, the trial court denied Grandmother's motion for visitation, finding "that no evidence was presented to demonstrate that it would in the best interests of the children for the paternal grandmother to have visitation." Grandmother appeals from that judgment, asserting one assignment of error:

> The trial court erred and abused it's [sic] discretion in finding that it would not be in the best interests of the children to allow the paternal grandmother visitation with the children.

### Standard of Review

{¶ 11} A trial court's decision on visitation involves an exercise of discretion that is reviewed for an abuse of that discretion. *In re A.H. & H.H.,* 2d Dist. Montgomery No. 26832, 2016-Ohio-1257, ¶ 15, citing *Johntonny v. Malliski,* 67 Ohio App.3d 709, 714, 588

N.E.2d 200 (11th Dist.1990). "The term 'abuse of discretion' implies 'that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### *Grandparent Visitation Rights*

{¶ 12} A common pleas court may grant visitation to the parent of a minor child's deceased parent if: 1) the grandparent files a complaint requesting "reasonable" visitation rights, and 2) the court finds that granting visitation "is in the best interest of the minor child." R.C. 3109.11. In deciding whether to grant visitation to a non-parent, "the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code." *Id.*; *see also In re F.D.,* 2d Dist. Montgomery No. 23358, 2009-Ohio-4788, ¶ 7.

{¶ 13} R.C. 3109.051(D) sets forth the following factors to be among those considered:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity* * *;

(2) * * * [I]f the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

\* \* \*

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

\* \* \*

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶ 14}** Grandparents who seek visitation rights bear the burden of proving that visitation would be in the best interest of their minor grandchild. *See Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 45. Additionally, although not necessarily determinative, the factor set forth at R.C. 3109.051(D)(15) – i.e., "the wishes and concerns of the child's parents" – is entitled to "special weight." *Id.* at ¶ 44, citing *Troxel v. Granville*, 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also In re F.D.* at ¶ 7, quoting *Harrold,* paragraph one of the syllabus ("Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11"). "Special weight" in that context has been interpreted to mean "extreme deference." *See In re N.C.W.*, 2014-Ohio-3381, 17 N.E.3d 119, ¶ 21 (12th Dist.).

**{¶ 15}** We conclude that Grandmother did not sustain her burden of proving that visitation on the terms she requested would be in K.A. and E.A.'s best interest. As

recognized by the United States Supreme Court, fit parents generally are presumed "to act in the best interests of their children." *Troxel* at 68. There is no suggestion that K.A. and E.A.'s mother is an unfit parent. As such, the wishes and concerns Mother expressed during her hearing testimony are to be accorded "special weight" among the factors to be considered in deciding a non-parent's visitation request. *See* R.C. 3109.051(D)(15); *In re F.D.* at ¶ 6; *In re N.C. W.* at ¶ 21 ("absent an allegation of parental unfitness, the parents' determination of their child's best interest must be afforded 'special weight'").

{¶ 16} Moreover, Mother articulated concrete and legitimate bases for the concerns she expressed regarding Grandmother's visitation request. Perhaps most significantly, she was apprehensive about the separation anxiety that manifested after K.A. and E.A. experienced the trauma of their father's suicide and K.A. was subjected to the added trauma of a shooting at her school. The "night terrors" and other symptoms she described implicate both the "mental health" factor listed at R.C. 3109.051(D)(9) and the "health and safety" factor listed at R.C. 3109.051(D)(7). In addition, both Mother and M.G. indicated that K.A. and especially E.A. had limited prior interaction and familiarity with Grandmother, a relevant consideration under R.C. 3109.051(D)(1). That limited familiarity heightens the concerns evoked by the girls' separation anxiety and related emotional issues, which are further heightened by consideration of K.A. and E.A.'s relatively young ages. *See* R.C. 3109.051(D)(4).

{¶ 17} In summary, the trial court did not abuse its discretion in concluding that the evidence presented at the January 30, 2018 hearing did *not* demonstrate "that it would be in the best interests of the children for the paternal grandmother to have visitation." Because the trial court did not abuse its discretion in making that determination,

Grandmother's assignment of error is overruled.

### *Conclusion*

**{¶ 18}** For the foregoing reasons, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and HALL, J., concur.

Copies mailed to:

John C.A. Juergens
Cathy J. Weithman
Hon. Lori L. Reisinger