[Cite as *In re B.B.W.*, 2024-Ohio-3030.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

IN THE MATTER OF: B.B.W.

C.A. No. 2024-CA-10

Trial Court Case No. 2022-G-00119

(Appeal from Common Pleas Court-
Juvenile Division)

. . . . . . . . . . .

O P I N I O N

Rendered on August 9, 2024

. . . . . . . . . . .

MATTHEW J. BARBATO, Attorney for Appellant

APRIL H. MOORE, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Petitioner-Appellant Grandmother appeals from the trial court's judgment finding that it was not in the best interest of the minor child, B.B.W., for Grandmother to be given visitation rights. For the reasons outlined below, we affirm the judgment of the

trial court.

## I.    Factual Background and Procedural History

{¶ 2} B.B.W. was born in 2016. Mother and the child's father were never married but, since ending their relationship in 2020, have agreeably maintained a co-parenting arrangement for the child.

{¶ 3} Grandmother, B.B.W.'s maternal grandmother, had lived together with Mother and B.B.W. at various points in time over a period of a few years before and after Mother and Father ended their relationship, and Grandmother provided care to the child during these times. However, around July 2020, Mother and the child permanently moved out of the shared residence, and Mother has denied Grandmother any visitation with the child since that time.

{¶ 4} Grandmother filed a motion for visitation rights on September 13, 2022, and a contested hearing was held on May 11, 2023.

{¶ 5} At the hearing, Maternal Uncle, Mother's brother and Grandmother's son, testified that Mother and the child had previously lived with him and Grandmother for a period of more than two years. During that period, Maternal Uncle observed a loving relationship between Mother and the child and perceived the relationship between Mother and Grandmother to be "completely normal." However, Maternal Uncle testified that there was a relationship breakdown between Mother and Grandmother in 2020 when Grandmother and Mother's father, Grandfather, separated and later divorced.

{¶ 6} Grandmother also testified at the hearing. According to Grandmother, her relationship with Mother deteriorated when she and Grandfather separated. Grandmother

claimed that Mother and Grandfather had attempted to use the child as leverage to convince Grandmother to relinquish certain property during her divorce from Grandfather. She also testified that she had tried unsuccessfully to repair her relationship with Mother since the divorce.

{¶ 7} Mother testified that her relationship with Grandmother had "never been good." She testified that Grandmother was "manipulative" and that she (Mother) never felt "good enough," "small enough," "smart enough," or "driven enough" for Grandmother. She also testified that, when her parents divorced in 2020, Mother decided that she no longer had to see Grandmother and that she finally felt "free from her."

{¶ 8} On July 17, 2023, the magistrate issued a decision granting Grandmother's motion for visitation rights and ordering Grandmother's visitation to occur once a month for three hours on a day and time to be agreed upon by the parties. Mother timely filed objections to the magistrate's decision.

{¶ 9} On February 5, 2024, the trial court sustained Mother's objections and overruled the magistrate's decision. In its judgment entry, the trial court noted that, although the guardian ad litem had recommended visitation with Grandmother, the guardian ad litem's report stated: "Mother asserts that she has been a victim of mental abuse from her mother for years, and fears that she (her) son will be mistreated." The guardian ad litem also observed that Grandmother did not dispute that there had been problems in her relationship with Mother and pointed out that Mother and Grandmother had not been able to resolve their differences amicably, which created additional concern about the effect that the situation may have on the child.

{¶ 10} In reaching its conclusion, the trial court considered a letter from Mother to Grandmother that reflected a history of distrust, accusation, and a perceived "toxic environment" between Mother and Grandmother. The trial court also considered Mother's testimony that Grandmother had not respected her boundaries, stating "[s]he showed up at my house multiples times after I had very aggressively told her to please not show up at my home." The trial court surmised that these boundary issues represented Mother's primary concern and that Mother had been consistent and adamant since her parents separated in 2020 that she did not wish for Grandmother to have visitation with the child. The trial court also considered Mother's concern that she had grown up listening to Grandmother speak negatively about Grandfather and her siblings and did not believe that the child should be exposed to the same negativity. The trial court also emphasized that Mother "grew up not believing that her mother liked her and that at times she was afraid of her."

{¶ 11} The trial court found that it was not in the best interest of the child to permit Grandmother to have visitation rights, because the child would be directly placed in a stressful situation if visitation were to be granted; the court thought it would be better to consider visitation in the future if the parties made progress in improving their relationship and there was no longer a spirit of animosity. The trial court determined that Mother was capable of making sound decisions regarding her child and his best interest and stated:

Mother cites a lifetime of feeling inadequate and unloved by her mother. It is not enough to hope that Grandmother can respect Mother's boundaries and work on improving their relationship. Consideration should be given to

Mother to raise her child in an environment that she does not believe is toxic and is only positive for her son.

{¶ 12} The trial court ultimately concluded that Grandmother had not met her burden of proving that visitation would be in the child's best interest, reasoning that Mother was a fit parent and, thus, her wishes for no visitation were to be given special weight and deference. Grandmother appeals.

## II.    Assignments of Error

{¶ 13} Grandmother asserts the following two assignments of error:

The Trial Court abused its discretion when overruling the Magistrate's Decision . . . because a finding that Appellee's wishes outweighed the best interest of the child was unreasonable and arbitrary.

The Trial Court's decision to overrule the Magistrate's Decision . . . was against the manifest weight of the evidence because a finding that limited visitation in this case between the child and Appellant was not in the child's best interest is a manifest miscarriage of justice.

{¶ 14} In her first assignment of error, Grandmother contends that the trial court's finding that she did not meet her burden of proving that visitation was in the child's best interest was unreasonable and arbitrary. Grandmother asserts that the guardian ad litem's recommendation was sufficient to establish that visitation was in the child's best interest. Grandmother further asserts, among other things, that, as found by the magistrate, she had a bonded relationship with the child and had played an active role in his life during his early years and, thus, the child's age weighed in favor of granting

visitation to further develop his bond with Grandmother and not permit time to wipe out all of his memory of her. The crux of Grandmother's argument is that the trial court did not properly weigh the requisite factors in determining whether to grant her visitation rights.

{¶ 15} In her second assignment of error, Grandmother contends that the trial court's judgment overruling the magistrate's decision was against the manifest weight of the evidence. Referencing the same arguments raised in her first assignment of error, Grandmother argues that it is a miscarriage of justice for the child to not have limited visits with Grandmother.

{¶ 16} Because Grandmother's two assignments of error are based on the same set of facts and arguments, we will address both together.

{¶ 17} When considering objections to a magistrate's decision, a trial court "may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." *In re A.H.*, 2016-Ohio-1257, ¶13 (2d Dist.), citing Civ.R. 53(E)(4)(b). "A trial court's decision on visitation involves an exercise of discretion and we review the decision for an abuse of that discretion." *Id.* at ¶ 15, citing *Johntonny v. Malliski,* 67 Ohio App.3d 709, 714 (11th Dist.1990). The term "abuse of discretion" implies "that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 18} The manifest weight standard of appellate review applies in both civil and criminal cases. *Amesse v. Wright State Physicians, Inc.*, 2018-Ohio-416, ¶ 46 (2d Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. In civil cases, "[w]hen a [judgment] is

challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Id.* at ¶ 46, citing *State v. Hill*, 2013-Ohio-717, ¶ 8 (2d Dist.), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶ 19}** A grandparent's visitation rights are governed by statute under R.C. 3109.051. R.C. 3109.051(B)(1) authorizes a court to grant visitation to a grandparent if: "1) The grandparent moves the court to do so; 2) The court finds the grandparent has an interest in the welfare of the child; and 3) The court finds that visitation is in the child's best interest." *In re A.H.* at ¶12. Grandparents, however, do not have legal rights based merely on the family relationship. *In re N.C.W.*, 2014-Ohio-3381, ¶ 19 (12th Dist.), citing *In re H.W.,* 2007-Ohio-2879, ¶ 9. The legal rights of grandparents are limited by statute, and, thus, a grandparent's visitation privilege is not "an absolute or constitutionally protected 'right' of association." *Id.*, quoting *In re Schmidt,* 25 Ohio St.3d 331, 336 (1986).

**{¶ 20}** A parent, on the other hand, has a fundamental right to raise her own child. *In re N.C.W.* at ¶ 18. "The United States Supreme Court has stated that the right to raise one's children is an 'essential' and 'basic civil right.' Parents have a 'fundamental liberty interest' in the care, custody, and management of the child. Further, it has been deemed

'cardinal' that the custody, care and nurture of the child reside, first, in the parents." *Id.*, quoting *Anderson v. Anderson,* 2009-Ohio-5636, ¶ 16 (12th Dist.), citing *In re Murray,* 52 Ohio St.3d 155 (1990). When a grandparent seeks to establish visitation, the parent's "fundamental right of exclusive control over their child is at stake." *In re N.C.W.* at ¶ 19, citing *In re Kaiser,* 2004-Ohio-7208, ¶ 48 (7th Dist.).

{¶ 21} Thus, while R.C. 3109.051(B) provides that a trial court *may* grant reasonable visitation rights to grandparents if the court determines that such visitation is in the child's best interest, grandparents seeking visitation rights bear the burden of proving that visitation would be in the best interest of their minor grandchild. When deciding whether to grant visitation rights to a grandparent, a trial court is required to consider the following 16 factors set forth in R.C. 3109.051(D):

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of

the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; . . .

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶ 22}** Still, "there is a presumption that fit parents act in the best interest of their children" and, accordingly, "a fit parent's decision regarding visitation should be afforded *great deference.*" (Emphasis added.) *Harrold v. Collier*, 2005-Ohio-5334, ¶ 12; *In re N.C.W.*, 2014-Ohio-3381, ¶ 21, quoting *Baker v. Baker,* 2003-Ohio-731, ¶ 10 (12th Dist.). "Ohio courts are obligated to afford some *special weight* to the wishes of parents of minor children when considering petitions for nonparental visitation . . ." (Emphasis

added.) *Harrold* at ¶ 44. "'Special weight' has been described as '*extreme deference.*'" (Emphasis added.) *In re N.C.W.* at ¶ 21, citing *In re Kaiser,* 2004-Ohio-7208, ¶ 15 (7th Dist.), quoting *Oliver v. Feldner,* 2002-Ohio-3209, ¶ 59 (7th Dist.).

{¶ 23} In the instant matter, the trial court was required to balance the factors set forth in R.C. 3109.051(D) while placing the burden of proof on Grandmother to establish that her visitation request was in the best interest of the child. In considering the reasons Mother opposed Grandmother's visitation request, the trial court noted that, throughout the proceedings, there was no suggestion, evidence, or testimony that Mother was an unfit parent, and thus her wishes and concerns were to be afforded "special weight" and even "extreme deference" among the factors to be considered in deciding Grandmother's motion. The trial court acknowledged that, while the guardian ad litem's report recommended the child's visitation with Grandmother, the guardian ad litem was also concerned that the parties had been unable to resolve their differences amicably due to of a complete breakdown in their relationship and that this breakdown could affect the child.

{¶ 24} In rejecting the magistrate's decision, the trial court reasoned that more deference should have been given to Mother's wishes regarding Grandmother's visitation with the child; it concluded that the evidence set forth by Grandmother was insufficient to overcome Mother's wish that visitation between Grandmother and the child not be established. The trial court stated:

The current state of Mother and Grandmother's relationship is a concern.

Although it is encouraged by the Court in the July 17, 2023 Magistrate's

Decision for the parties to work on improving their relationship, they simply are not in any position at this time for this to happen. Mother cites a lifetime of feeling inadequate and unloved by her mother. It is not enough to hope that Grandmother can respect Mother's boundaries and work on improving their relationship. Consideration should be given to mother to raise her child in an environment that she does not believe is toxic and is only positive for her son. This is not a matter of Mother not wanting to share her time with this child with any other person. [Mother] was adamant that she did not want any visitation, if the court was to order it for [Grandmother], to interfere with the visitation arrangement between Father and child.

{¶ 25} After reviewing the magistrate's decision, the hearing transcript, and the exhibits admitted into evidence, the trial court ultimately deduced that, although the magistrate indicated that she had given "special weight" to Mother's wishes, more weight was actually given to the development of a bond between Grandmother and the child.

{¶ 26} We cannot conclude that the trial court's finding—namely that Grandmother did not satisfy her burden of establishing that her visitation request was in the best interest of the child—was unreasonable and arbitrary. As pointed out by the trial court, the 15th factor set forth in R.C. 3109.151(D), although not determinative, required the trial court to consider "the wishes and concerns of the child's parents, as expressed by them to the court," when the requested visitation was sought by a person other than a parent and those wishes and concerns should have been afforded "special weight" and "extreme deference."

{¶ 27} The trial court was required to give proper weight to Mother's wishes and the presumption that Mother, as a parent, was acting in the best interest of her child when opposing Grandmother's visitation request. The scale was tipped in favor of Mother because of the special weight and extreme deference to be given to her wishes and concerns, while the burden of proof was on Grandmother to demonstrate that it was in the child's best interest for the visitation request to be established. The trial court found Grandmother failed to meet her burden. Mother had remained steadfast for more than three years in her opposition to Grandmother's visitation request, because of the history of their "toxic" relationship and her belief that the child should not be subjected to Grandmother's negativity. Additionally, because there was no evidence she was unfit, Mother had the benefit of the presumption that, as a fit parent, she was acting in the best interest of her child. Although the trial court did not examine all of the factors in its judgment entry, many of them were inapplicable, and the factors that were applicable were evaluated. The trial court gave deference to Mother's wishes and concerns where special weight and extreme deference were due under the circumstances. We find no abuse of discretion in the trial court's order regarding visitation. For the foregoing reasons, we also cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice such that the judgment must be reversed. Accordingly, Grandmother's two assignments of error are overruled.

### III.     Conclusion

{¶ 28} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.