## Johntonny v. Malliski
### [Cite as 3 AOA 313]

Case No. 89-G-1521
Geauga County, (11th)
Decided May 18, 1990

*Patricia J. Schraff, 401 South Street, Chardon, Ohio 44024, for Plaintiff-Appellee.*

*Joseph R. Ulrich, Ulrich and Cantor, One Victoria Place, Suite 320, 100 South Park Place, Painesville, Ohio 44077, for Plaintiff-Appellant.*

FORD, J.

This is an appeal from the lower court's denial of a motion to review, reconsider and redetermine the father, appellant Mark A. Malliski's, visitation rights.

The parties were divorced on May 12, 1982. Custody of the couple's son, Matthew Malliski, born on February 24, 1979, was given to the mother, and liberal and reasonable visitation rights were given to the father. Subsequent events led to the father's visitation rights being suspended, on September 29, 1987, until further court order. This decision to suspend visitation rights was based primarily on the testimony of a clinical psychologist employed in the Trumbull County court system.

The child had been sent to the Department of Human Services to be examined for possible sexual abuse after Matthew complained about his father repeatedly scrubbing his rectum. It

was determined that Matthew had not been sexually abused but that he was suffering the effects of constant criticism and fault-finding by his father and grandparents.

By an agreed entry of June 24, 1988, it was ordered that Dr. Margaret Lahner, "a licensed psychologist," in conjunction with the child's "therapist" and the father's "therapist," should determine "when supervised-visitation shall be appropriate and the terms thereof." It was also ordered that Dr. Lahner would supervise the visitation when it resumed. Supervised visitation commenced subsequently.

On October 21, 1988, the paternal grandparents intervened in the trial court for the purpose of having their rights to visitation determined. That same day, the father filed a motion for the court to review, reconsider and redetermine his visitation rights, as the present schedule offered "nonmeaningful access" to his son in the office of Dr. Lahner. The trial court denied the motion and suspended the visitation rights of appellant Mark Malliski and the visitation rights of the paternal grandparents.

Appellant timely appealed raising the following assignments of error:

"1. The trial court erred in limiting or denying visitation to the noncustodial parent, *i.e.,* the father.

"2. The trial court erred in denying visitation for the paternal grandparents."

In his first assignment of error, appellant argues that the trial court erred in limiting or denying his visitation rights.

This court set out the applicable law on terminating the noncustodial's visitation rights in Ohio in *Durso* v. *Durso* (Dec. 4, 1987), Trumbull App. No. 3832, unreported. *Durso, supra,* relied heavily on the decision in *Pettry* v. *Pettry* (1984), 20 Ohio App. 3d 350. *Pettry, supra,* states:

"1. A noncustodial parent's right of visitation with his children is a natural right and should be denied only under extraordinary circumstances, such as unfitness of the noncustodial parent or a showing that visitation with the noncustodial parent would cause harm to the children. The burden of proof in this regard is on the party contesting visitation privileges." *Id.* at paragraph one of the syllabus.

*Durso* further cited *Pettry* as stating that the standard of proof for one contesting visitation is clear and convincing evidence.

While *Pettry* and *Durso* involved the termination of visitation, and this case merely sus-

pends visitation, there is clear and convincing evidence to support the trial court's decision to suspend visitation.

*Pettry,* at p. 353, states "[a] total severance between appellant and his younger son should be the last resort." The trial court, by suspending visitation until further order of the court, has not taken that last resort.

There was evidence presented of the child's intense dislike and fear of his father and child, due primarily apparently to the youngster's perceptions of his father's constant fault-finding and lack of empathy for him. Despite these determinations by psychologists, the father has failed to cooperate in therapy, and he has not acknowledged the existence of a problem. The father feels that any possible problem is due to the mother "poisoning" the child's mind. However, there was evidence that the mother was cooperative and encouraged visitation.

*Durso,* at p. 6, sets forth the standard of review in such cases, by stating:

"A reviewing court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *State, ex rel Shady Acres Nursing Home, Inc.* v. *Rhodes* (1983), 7 Ohio St. 3d 7. Where the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by an appellate court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279.

In this case the trial court's findings of facts are based on testimony by the appellant, and the supervising psychologist, and on an in-camera interview with the child. Therefore, this court should not disturb the trial court's findings of fact, as they are supported by competent, credible evidence.

In *Brest* v. *Brest* (July 9, 1982), Trumbull App. No. 302, unreported, this court held that, in modifying visitation, the trial court is granted discretion limited only by the child's best interest. That opinion continues to express this court's reasoning, and, as such, the trial court's decision will only be reversed if an abuse of that discretion is found.

"The term abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448; *Conner* v. *Conner* (1959), 170 Ohio St. 85; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372.' *State*

v. *Adams* (1980), 62 Ohio St. 2d 151, 157-158. Accord *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217.

"Although *Adams* dealt with 'abuse of discretion' in a criminal law context, our citation of *Conner* implies that the term has the same meaning when applied in a domestic relations context." *Blakemore, supra,* at 217.

The trial court found that the possibility of harm outweighs the parental right to visitation. This harm will continue to exist until the father acknowledges that a significant psychological problem exists with his son, and mutually appropriate cooperative and corrective measures are taken. At the present time, the father appears to refuse to acknowledge the opinions of several trained experts. Under these circumstances, the trial court did not abuse its discretion by suspending the father's visitation rights until a further court order.[1] Appellant's first assignment of error is without merit.

Appellant's second assignment of error contends that it constitutes error for the trial court to deny the paternal grandparent's visitation.

The paternal grandparent's pursuant to the judgment entry of November 8, 1985, were permitted to pick up the child and return him when his father was unavailable for visitation. The paternal grandparents have never been granted visitation rights independent from the father's.

The law presently applicable to grandparent visitation has been outlined in *Drennen* v. *Drennen* (Aug. 26, 1988), Erie App. No. E-88-7, unreported. *Drennen, supra,* at 2-3, states:

"Grandparents have no inherent visitation rights with grandchildren or a constitutional right of association with them. *In re Schmidt* (1986), 25 Ohio St. 3d 331; *In re Whitaker* (1988), 36 Ohio St. 3d 213, 215. However, pursuant to R.C. 3109.06(B), a court has discretion to grant reasonable companionship or visitation * * *

"The standard a court must use in making its decision whether to order visitation is to determine whether the visitation is in the child's best interest. *In re Whitetaker, supra,* at 216-217; *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110; *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83; *In re Griffiths* (1975), 47 Ohio App. 2d 238. * * *

"Since the trial court has discretion in determining whether to grant visitation under R.C. 3109.05 (B), an abuse of that discretion must be shown in order for an appellate court to reverse the trial court; that is, the trial court's

decision must have been unreasonable, arbitrary or unconscionable." See *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219; *Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 348, 355; *Conner* v. *Conner* (1959), 170 Ohio St. 85; *Dennison* v. *Dennison* (1956), 165 Ohio St. 146, 150.

While the law applicable to this case continues to be that stated in cases such as *Drennen,* new legislation will soon provide a procedure for determining grandparent visitation rights. Amended Substitute House Bill No. 15, effective May 31, 1990, provides a procedure by which grandparents, and other interested persons, may petition the court for a determination of their visitation rights. Sections (B)(1)(a)-(c) allow a court to grant reasonable visitation upon the filing of a motion, and the determination that an interest in the child's welfare exists, and that the visitation would be in the child's best interests.

If the circumstances in this case change, the paternal grandparents may petition the trial court, on their own behalf, to reconsider the denial of their visitation rights. It may be possible to grant them supervised visitation rights at that time.

However, until that time, the facts of the case closely resemble those of Drennen. In *Drennen,* the court considered the likelihood of the grandmother having close contact with her son, the child's abusive father, and denied visitation.

In this case, the trial court heard evidence that the grandparents live only 500 feet from the child's father, and that he is at the paternal grandparents' house everyday. There was evidence that the paternal grandparents do not acknowledge the ill-effects of the father's treatment of his son, and that they reinforce their son's conduct. From this evidence the court could determine that the paternal grandparents' visitation is not within the child's best interest. Having made this determination, the trial court did not abuse its discretion by suspending the paternal grandparents' visitation rights until further court order. Appellant's second assignment of error is without merit.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J.
BAIRD, J, sitting by assignment.

[1] The procedure outlined in the Agreed Entry of June 24, 1988, should be modified so that the trial court has not delegated any judicial responsibilities to the panel of psychiatrists. While they may recommend when supervised visitation should resume, the final determination rests with the court having jurisdiction over the matter.