[Cite as *Dubec v. Pochiro*, 2010-Ohio-1293.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ANNETTE DUBEC n.k.a. VENUTO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-6 |
| | ) | |
| CHRISTOPHER POCHIRO, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas, Juvenile Division, of Mahoning
County, Ohio
Case No. 98JI346

JUDGMENT:                                   Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee                      Attorney Vincent J. Wloch
                                                      1040 S. Commons Place #200
                                                      Youngstown, Ohio 44514

For Defendant-Appellant                 Attorney Thomas E. Zena
                                                      1032 Boardman-Canfield Road
                                                      Youngstown, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: March 26, 2010

DONOFRIO, J.

{¶1} Defendant-appellant Christopher Pochiro appeals a decision terminating physical visitation with his fourteen-year-old daughter and restricting contact to weekly telephone calls. He argues that the decision was against the manifest weight of the evidence and an abuse of discretion, and that it violated his due process rights.

{¶2} The Mahoning County Juvenile Court found Pochiro to be the father of Lana Marie Pochiro and awarded him visitation with her. Lana's mother, plaintiff-appellee Annett Dubec n.k.a. Venuto is Lana's residential parent and legal custodian. In the late 1990's, Venuto married and relocated, with court permission, to the Massillon, Ohio area. Pochiro lives in Boardman, Ohio. Apparent acrimony between Pochiro and Venuto led to numerous proceedings over the ensuing years regarding Pochiro's visitation with Lana.

{¶3} On September 15, 2008, the trial court awarded Pochiro visitation as follows:

{¶4} "The Defendant, Christopher Pochiro is hereby granted the Standard Order of Visitation commencing Friday, the 19th day of September, 2008 at 6:00 p.m. Visitation is to take place at the paternal grandmother's residence until further Court order. There shall be no mid week visitation due to the distance between the parents [sic] residences. Parties are permitted to enjoy visitation outside the paternal grandmother's residence throughout the day. Parties are to sleep at the paternal grandmother's residence. The subject child is not permitted at the Defendant's home until further order of the Court." (Docket 14.)

{¶5} The court modified the order the following week to allow visitation at Pochiro's residence provided he clean up clutter around the home.

{¶6} On October 8, 2008, Pochiro called Lana to tell her that his mother had died that day in a car accident. The funeral arrangements had not been finalized, but Pochiro told Lana that the calling hours would be that weekend. Pursuant to the regularly scheduled visitation, Pochiro picked up Lana on Friday, October 10, 2008 at 6:00 p.m. Since Pochiro does not have a valid driver's license, Pochiro's friend

provided the transportation from Massillon to Pochiro's home in Boardman. The evening was relatively uneventful with Pochiro and Lana carving pumpkins and making pies.

**{¶7}** The next morning, Lana sent text messages to her cousin, Dillon. According to Pochiro, Dillon and his mother (Venuto's sister) drove by his residence that morning and pulled into the driveway causing him to call Boardman Police around 9:00 a.m.

**{¶8}** Later in the morning, an argument ensued between Pochiro and Lana over the text messages and his being upset that she had not brought appropriate clothing with her to wear for his mother's funeral. At some point Lana retreated to her bedroom and sat on the floor with her back to the door. Lana claimed that Pochiro kicked in the door, repeatedly striking her back with the door as he kicked it. Pochiro claimed that the door was partially open and that when he tried to push it open it simultaneously hit Lana in her back and him in the head. Apparently, Lana had text messaged Venuto about the altercation and Venuto in turn notified Boardman Police who again went to Pochiro's home.

**{¶9}** Boardman Police arrived at Pochiro's home at 2:34 p.m. After Lana expressed her concerns to them regarding her safety, the responding officer's supervisor made the decision to remove her from the home and placed her in the custody of her maternal aunt.

**{¶10}** As a result of these events, Venuto filed a motion to suspend visitation on October 22, 2008. In response, Pochiro filed a motion and request for findings of contempt and sanctions. The court held a hearing on November 15, 2008. The court heard testimony from Pochiro, Venuto, Lana, the Boardman police officers, the guardian ad litem, and Pochiro's friend who had provided him the transportation to get Lana for visitation. Pochiro's and Lana's testimony regarding the events of October 11, 2008 conflicted. Lana testified that she never wanted to visit with Pochiro again, citing concerns over his yelling and anger problems.

{¶11} On November 25, 2008, the court issued its decision. After balancing the rights of parents with the best interests of the child, the court terminated Pochiro's physical visitation with Lana, but did allow weekly telephone contact. The court denied Pochiro's motion for contempt and sanctions.

{¶12} The court based its decision on testimony gathered at the November 15, 2008 hearing as well as information it had received from previous hearings concerning visitation, including a psychological evaluation of the parties and Lana, a counseling report between Pochiro and Lana, and two prior in-camera interviews with Lana.

{¶13} The court noted that visitation was no longer feasible at Pochiro's residence due to clutter that had accumulated or at Pochiro's mother's residence since she had just recently passed away. The court also noted that Pochiro was unemployed and attempting to qualify for social security disability benefits. He does not have a valid driver's license, relying on friends for transportation, and, by his own admission, leads a reclusive lifestyle with few friends or community ties.

{¶14} In contrast, Lana lives in a middle class neighborhood in Massillon with her mother, step-father, and half-sister. She excels academically and is active in extracurricular activities and rides, cares for, and trains horses.

{¶15} The court concluded that visitation was not in Lana's best interests based on the prior interrelationship with Pochiro; Lana's wish to not have contact with him; Lana's age; her adjustment to home, school, and community; and her perceived safety. This appeal followed.

{¶16} Pochiro raises three assignments of error which can be addressed together. They state, respectively:

{¶17} "THE DECISION OF THE COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶18} "THE TERMINATION OF VISITATION BY THE COURT IS AN ABUSE OF DISCRETION."

**{¶19}** "THE JUDGMENT OF THE TRIAL COURT IS A VIOLATION OF THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW."

**{¶20}** Pochiro argues that the trial court had no basis to terminate his visitation rights and that it did so only out of frustration over the numerous proceedings that had taken place over the years concerning visitation. He argues that the court improperly gave weight to Lana's preference for no visitation and that her attitude was the result of parent alienation. He argues that there was not clear and convincing evidence that extraordinary circumstances existed to terminate visitation. Citing *Johntonny v. Malliski* (1990), 67 Ohio App.3d 709, 588 N.E.2d 200, and *Pettry v. Pettry* (1984), 20 Ohio App.3d 350, 486 N.E.2d 213. He believes the court went too far by terminating visitation rather than suspending it with the opportunity to reinstate visitation at a later date.

**{¶21}** Modification of visitation rights is left to the sound discretion of the trial court. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 45, 706 N.E.2d 1218. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

**{¶22}** Pursuant to R.C. 3109.051(D), in determining parenting time matters under R.C. 3109.051, the court shall consider all of the following factors: (1) the prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity; (2) the geographical location of the residence of each parent and the distance between those residences; (3) the child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (5) the child's adjustment to home, school, and community; (6) any wishes and concerns of the child expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed parenting time and to facilitate the

other parent's parenting time rights; (11) prior convictions for certain offenses or acts resulting in abuse or neglect; (12) (applies only when person other than a parent seeks visitation); (13) whether the residential parent has continuously and willfully denied parenting time rights; (14) whether either parent has established a residence or is planning to establish a residence outside this state; (15) (applies only where person other than parent seeks visitation); (16) any other factor in the best interest of the child. R.C. 3109.051(D).

{¶23} Generally, the trial court looks only to the factors enumerated in R.C. 3109.051(D) and determines if modification of visitation is in the best interest of the child. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 45, 706 N.E.2d 1218. However, in some cases, the foregoing statute does not stand in isolation. *In re Kaiser*, 7th Dist. No. 04 CO 9, 2004-Ohio-7208, ¶10. It must be read and interpreted in conjunction with other factors derived from caselaw to protect against infringement upon an individual's constitutional rights. Id.

{¶24} This court has specifically held that "[t]he nonresidential parent has a fundamental and natural right to visitation." *Anderson v. Anderson* (2002), 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, ¶22 (7th Dist.), citing *Johntonny v. Malliski* (1990), 67 Ohio App.3d 709, 588 N.E.2d 200, and *Pettry v. Pettry* (1984), 20 Ohio App.3d 350, 486 N.E.2d 213. "The child also has a fundamental right to visitation with the nonresidential parent." Id., citing *Porter v. Porter* (1971), 25 Ohio St.2d 123, 54 O.O. 260, 267 N.E.2d 299, paragraph three of the syllabus.

{¶25} Concerning this fundamental right of the nonresidential parent to visitation with their child, this court has also noted that the right should be denied only under extraordinary circumstances. *Hoppel v. Hoppel*, 7th Dist. No. 03 CO 56, 2004-Ohio-1574, ¶44, citing *Pettry*, supra, paragraph one of the syllabus. The burden of proof is on the one contesting visitation to demonstrate extraordinary circumstances by clear and convincing evidence. *Pettry*, 20 Ohio App.3d at 352-353, 486 N.E.2d 213.

**{¶26}** *Pettry* identified two extraordinary circumstances that would qualify: (1) if the noncustodial parent was unfit; or (2) if visitation would cause harm to the child. Another court has held that it would be an extraordinary circumstance if the noncustodial parent were imprisoned for a term of years for a crime of violence. *In re Hall* (1989), 65 Ohio App.3d 88, 90, 582 N.E.2d 1055. The examples listed in *Pettry* and *Hall* are not meant to provide an exclusive list of possible extraordinary circumstances. *Hoppel*, supra (involving nonresidential parent's conviction for sexual battery against subject child's stepsister). Once the custodial parent proves the existence of an extraordinary circumstance, the burden shifts back to the noncustodial parent to prove that any visitation would be in the best interests of the child. Id.

**{¶27}** In this case, Venuto contends that Pochiro's visitation rights were not terminated because the trial court issued a "continuing order" of telephone contact. Despite Venuto's argument to the contrary, the trial court did terminate Pochiro's visitation rights. In the second to last paragraph of the court's judgment entry, the court clearly states "it is the order of this Court that visitation between the child and defendant is *terminated* * * *."

**{¶28}** The court did state that Pochiro "may have telephone contact with the subject child every Wednesday at 7:00 p.m." But that provision did not mean that Pochiro's visitation rights had not been terminated. Given the court's acknowledgment of Lana's statements that "she never wants to see him," it was obvious that meaningful telephone contact was unlikely to occur. Notably, the court also terminated Pochiro's monthly child support obligation.

**{¶29}** The Ohio Supreme Court has observed that visitation means physical, face-to-face visitation. In *Braatz*, supra, the Court equated the nonresidential parent's right to visitation with temporary physical control. *Braatz*, 85 Ohio St.3d at 44, 45, 706 N.E.2d 1218. See, also, *In re Gibson* (1991), 61 Ohio St.3d 168, 171, 573 N.E.2d 1074. So, even disregarding the trial court's specific order terminating

Pochiro's visitation rights and focusing only on the court's provision for telephone contact, the order still *effectively* terminated Pochiro's visitation rights with Lana.

**{¶30}** Given that the trial court terminated Pochiro's constitutionally protected visitation rights, we must now review the court's judgment based on the standard elucidated above. The trial court did review Lana's best interests under the factors enumerated in R.C. 3109.051(D). The court gave particular attention to: Lana's prior interrelationship with Pochiro, R.C. 3109.051(D)(1); her age, R.C. 3109.051(D)(4); her adjustment to home, school, and community; R.C. 3109.051(D)(5); her wish to not spend time with Pochiro, R.C. 3109.051(D)(6); and the "perceived safety of the child," R.C. 3109.051(D)(7). However, a thorough review of the trial court's judgment entry reveals that it did not make the required initial finding that there was clear and convincing evidence of extraordinary circumstances that would justify terminating Pochiro's visitation rights. The trial court skipped that step and instead limited its review to R.C. 3109.051(D)'s best interests of the child factors.

**{¶31}** We acknowledge Pochiro's failure to provide a transcript of the November 18, 2008 proceedings which led to the court's decision. We also acknowledge that Venuto only sought a suspension of visitation. But, the permanent termination of parental rights has been described as "the family law equivalent to the death penalty in a criminal case." *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. Thus, a parent "must be afforded every procedural and substantive protection that the law allows." Id. Parental rights receive even more stringent protection under Ohio law than the Constitution requires. *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 46, 693 N.E.2d 794. Given the gravity of the court's order, we find that when a trial court terminates a nonresidential parent's right of visitation the court must make a finding in its judgment entry that there was clear and convincing evidence of extraordinary circumstances justifying termination of those rights. Consideration should also be given to the appellee's request to suspend visitation.

**{¶32}** Accordingly, Pochiro's first, second, and third assignments of error have merit.

**{¶33}** The judgment of the trial court is hereby reversed and remanded for further proceedings according to law and consistent with this court's opinion.

Vukovich, P.J., concurs.

Waite, J., concurs in judgment only.