[Cite as *Facemyer v. Facemyer*, 2026-Ohio-910.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

GREGORY J. FACEMYER,

Plaintiff-Appellant,

v.

KRISTEN K. FACEMYER nka PATCH,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0081**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio
Case No. 2012 DR 00437

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Anthony W. Greco* and *Atty. Joseph S. Jeziorowski,* Greco Law, for Plaintiff-Appellant and

*Atty. Louis E. Katz* and *Atty. Matthew C. Giannini,* for Defendant-Appellee.

Dated: March 19, 2026

**DICKEY, J.**

**{¶1}** Appellant, Gregory J. Facemyer, appeals from the July 30, 2025 judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, terminating parenting time with his daughter, now 17 years old and weeks away from her 18th birthday, following a remand by this court in *Facemyer v. Facemyer*, 2025-Ohio-205 (7th Dist.). In this appeal, Appellant asserts the trial court abused its discretion in terminating his visitation rights because no extraordinary circumstances were identified nor present. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** The following facts and procedural history are taken from Appellant's prior appeal with this court, *Facemyer* at ¶ 2-21:

> Appellant and Appellee, Kristen K. Facemyer (nka Patch), were married and have two children: E.F. (d.o.b. 1/11/2005, emancipated); and M.F. (d.o.b. 5/3/2008) ("minor child"). The parties divorced on June 19, 2013. They were awarded equal parenting time pursuant to a shared parenting plan.

> On September 5, 2019, the trial court terminated the shared parenting plan and designated Appellee as the children's residential parent and legal custodian. However, the court determined it was in the children's best interest for the parties to be awarded equal parenting time. Appellee subsequently filed a motion for modification of parenting time and companionship.

> A two-day hearing was held on December 15, 2023 and April 5, 2024. Present for the hearing were Appellant; counsel for Appellant; Appellee; counsel for Appellee; Attorney Edward Colon, the Guardian Ad Litem ("GAL"); and Attorney Carol Sopkovich, the duly appointed counsel for the minor child. Attorney Sopkovich was not present at the hearing on December 15, 2023, because her appointment as counsel for the minor

child occurred after that time. At the hearing on April 5, 2024, the minor child was less than a month away from celebrating her sixteenth birthday.

Throughout these proceedings, it was found by the trial court that Appellant has a confrontational personality and has maintained an aggressive and adversarial approach toward the children and Appellee.

The GAL described the minor child as very bright but very timid, repressed, and emotionally fragile. The GAL described Appellee as passive aggressive. The GAL described Appellant as overbearing and persistent. While acknowledging challenges in the relationship between Appellant and the minor child, the GAL did not believe it was in the minor child's best interest for Appellant's parenting time to be reduced or terminated. The GAL believed restricting Appellant's visitation would be detrimental to the minor child. The GAL said the focus should be on mending the father-daughter relationship. The GAL recommended counseling for the entire family.

The trial court did not accept the GAL's recommendation for family counseling indicating that the family had previously been involved in counseling and that it was unsuccessful. Appellant, however, believes counseling is necessary due to his observations that the minor child is in distress. Appellee, the parent with medical decision-making authority, decided not to enroll the minor child in counseling.

Appellee believes extreme issues exist between Appellant and the minor child. Appellee testified her daughter is not happy with the current visitation order and spends a lot of time in her bedroom by herself. Appellee wished for Appellant's visitation to be modified to alternating weekends.

The trial court held three separate in camera interviews with the minor child beginning in September 2022. The minor child said when she is with Appellant at his house, she spends time alone in her bedroom. When traveling with Appellant in his car, the minor child sits in the backseat and

does not communicate with him. The minor child complained that when she is at a restaurant with Appellant, he is on his cell phone. The minor child said that time spent with her father is not positive or rewarding.

The parties' older daughter, E.F., turned 18 years old on January 11, 2023. Because E.F. does not like how Appellant treats her, she has stopped seeing him. E.F. also does not like how Appellant treats the minor child. E.F. expressed her concerns when she would no longer accompany her sister to visits with their father. The trial court cautioned Appellant that he was placing his relationship with the minor child in jeopardy if he did not amend his parental manners.

Appellant testified the minor child is a straight-A student and involved in many activities. Appellant said his relationship with the minor child is very good and described his daughter as a normal teenage girl. Appellant does not know why his parenting time should be limited and claims he is the victim of parental alienation. Appellant believes that not only should his parenting time continue, but additional parenting time should be provided. Appellant acknowledged he has experienced parental problems with the minor child. He said he has gone to a counselor to improve as a parent. Appellant and his mother, Barbara Facemyer, have attended all of the minor child's extracurricular activities. During visits, Appellant said he made efforts to improve his relationship with his daughter. He asked her about school and her activities. He would also ask her to do things together such as shop or go to dinner. Appellant believed counseling was not only feasible, it should be mandatory to maintain a vital relationship with his daughter.

Appellant's mother testified that for approximately the past one-year period, despite her longstanding relationship with her granddaughter, the minor child began giving her only one-word answers to questions and refused to otherwise communicate with her. She additionally testified that for the past two years, the minor child would immediately dash to her room

after school pickup and indicated her mannerisms and demeanor changed with Appellant, family, and friends.

Following the December 15, 2023 hearing, the trial court found the minor child expressed sufficient reasoning ability to express her wishes and concerns. The court found the minor child's reasons for not wanting to see her father were well thought out. Based upon the testimony of all parties and the GAL, the trial court ruled at that time that effective January 1, 2024, parenting time for Appellant should be on a week-on, week-off basis from 5:00 p.m. Friday to 5:00 p.m. Sunday.

At the outset of the April 5, 2024 proceedings, the trial court permitted the parties to conduct a pretrial with counsel and the GAL. As a result, with the exception of the pending motions for companionship and parenting time, all other motions were withdrawn, including for modification of child support.

The minor child's counsel requested that the trial court conduct an in camera interview with the GAL as to the wishes and the concerns of the minor child. At the April 5, 2024 last in camera interview, the minor child expressed that she did not want to visit with Appellant, but that should she be ordered to visit with her father, that overnight visits be terminated. The minor child requested that the trial court and the GAL listen to an audio recording she made during a visit with Appellant. The recording was approximately 30 minutes long with Appellant saying to the minor child that he is trying to be her dad and show her love. The recording also reveals Appellant going on about why the minor child does not want to spend time with him and blaming Appellee and others for their relationship.

During the afternoon session, Appellant elected to present evidence relevant to the companionship and parenting of the minor child. The GAL believed the prior order of the trial court (prior to December 15, 2023) should be re-implemented. The GAL believed it would be in the minor child's best interest to have a reunification with Appellant. The GAL acknowledged,

however, that the minor child indicated during the last in camera interview that she did not want to visit with her father and presented a 30-minute tape of Appellant's monologue including his dissertation as to why the parenting and companionship were not successful. The minor child basically indicated she remains in her bedroom during visits with her father. The GAL reaffirmed his recommendation that Appellant's visits with the minor child should continue.

Appellant's mother opined that the minor child's attitude changed during the past year. She did not understand why since Appellant always attempted to provide proper parenting.

Appellant testified he does not understand the wishes and concerns of his daughters. Appellant continues to believe that he has a loving relationship with the minor child and that parenting time should be expanded. Appellant believes many of the issues and problems that have manifested are a result of parental alienation. Regarding the audio recording, Appellant was unaware that the minor child was taping him, does not know the date of the taping, and does not know the contents.

The trial court indicated it has been involved with this matter for approximately two years. The court found it necessary to prohibit Appellant from contacting the minor child's medical and dental personnel. The court further found it necessary to modify Appellant's parental rights and responsibilities by eliminating holidays and summer vacations, resulting in the current order of every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. The court noted that the tape recording presented by the minor child was a 30-minute monologue of Appellant. The minor child indicated she no longer wishes to have any contact with her father.

In its June 4, 2024 judgment entry, the trial court concluded as follows:

In determining whether to grant visitation rights to a parent, the Court considers the following Ohio Revised Code Section 3109.05(1)(D)(1-15):

A. The prior interaction with the person requesting visitation and that person is not a parent, sibling or relative;

B. The geographical distance between the child's residence and the non-residential parent's or the residence of the person requesting visitation if not a parent;

C. The child's and the parent's available time, including, but not limited to, the parent's work schedule, the child's school schedule, the child's and the parent's holiday and vacation schedule;

D. The age of the child;

E. The child's adjustment to home, school and community;

F. The child's wishes;

G. The health and safety of the child;

H. The amount of time the child will have to spend with siblings;

I. The mental and physical health of all parties;

J. Each parent's willingness to facilitate visitation;

K. Whether the parent or other party requesting visitation has been convicted or pleaded guilty to child abuse;

L. Whether either parent has established or plans to establish a residence out of state; and

M. Any other factor to the best interest of the child.

(6/4/2024 Judgment Entry, p. 8-9).

Case No. 25 MA 0081

The trial court further concluded:

The Court has been involved with this case for a period of approximately two (2) years and has noted the ongoing issues between the emancipated child . . . and the current minor child . . . . The Court is aware of the emancipated daughter's unwillingness to communicate and visit with the Plaintiff. Further, the Court acknowledges during the course of the proceedings, the interference by the Plaintiff with dental/orthodontic issues. During the past approximately twelve (12) months, the Court has conversed with both counsels of the Plaintiff and has indicated outstanding issues between the Plaintiff and the minor child. That the Court has advised Plaintiff's counsel of the minor child's struggle in her dealings with the father and the genuineness of the minor child's in camera interviews. This Court, as all Domestic Relation Courts and Family Courts are motivated by the best interest of the minor child as set forth in the Ohio Revised Code. The Court has observed the ongoing issues and the intelligence and intransigence of the Plaintiff in regard to the Defendant and the minor child as well as the emancipated child. Based upon the best interest of the minor child, the Court does hereby issue its decision.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the current parenting order of January 5, 2024, in which Plaintiff received alternating weekends parenting time from Friday at 5:00 p.m. to Sunday at 5:00 p.m. shall hereby be terminated. That the minor child shall not be required at this time to have any parenting time with the Plaintiff. If it is true according to Plaintiff's testimony that he has a "loving" relationship with [the minor child], a Court imposed visitation schedule may actually diminish the time [the minor child] would be with Plaintiff. [The minor child] is now 16 years old and her wishes are given greater weight than if she were much younger. Let the "loving" relationship expressed by Plaintiff repeatedly serve as the source for nurturing the future relationship between [the minor child] and Plaintiff. The minor child shall unilaterally determine when and

how any parenting time shall occur with the Plaintiff. The Plaintiff may contact the minor child via text messages and emails in a reasonable fashion to maintain contact with his daughter. . . .

(*Id.* at p. 9-10).

*Facemyer*, 2025-Ohio-205, at ¶ 2-21 (7th Dist.).

**{¶3}** Appellant filed an appeal, Case No. 24 MA 0064, in which he raised two assignments of error. First, Appellant asserted the trial court erred in terminating his visitation rights because it failed to make the required initial finding that there was clear and convincing evidence of extraordinary circumstances that would justify such termination. Second, Appellant alleged the court erred in accepting and considering a recorded statement that purports to set forth the minor child's concerns regarding parenting time.

**{¶4}** On January 16, 2025, this court found merit in both of Appellant's assignments of error and we reversed and remanded. *Facemyer* at ¶ 1, 29, 38, 39.

**{¶5}** Specifically, regarding Appellant's first assignment, this court stated:

At the center of all domestic cases involving minors is the best interest of the child. Appellant wants visitation with his daughter. The minor child does not want to spend time with her father. The GAL did not believe it was in the minor child's best interest for Appellant's parenting time to be reduced or terminated. Notwithstanding Appellee's belief that courts cannot fix broken parent-child relationships, this court will not disregard the issue before us and ignore the relevant case law.

As addressed, the trial court reviewed the minor child's best interests under the factors enumerated in R.C. 3109.051(D) in its judgment entry, and concluded it was in the minor child's best interest to terminate Appellant's visitation. However, the court did not make the required initial finding that there was clear and convincing evidence of extraordinary circumstances that would justify terminating Appellant's visitation rights.

Case No. 25 MA 0081

*See Dubec*, 2010-Ohio-1293, ¶ 26 (7th Dist.). The trial court skipped that step and instead limited its review to the best interest of the child factors.

Although the directive may be procedural rather than substantive, on remand, should the trial court again decide to terminate Appellant's visitation rights with the minor child, before doing so, the trial court, in its judgment entry, shall make the required initial finding that there is clear and convincing evidence of extraordinary circumstances that would justify such termination.

*Facemyer* at ¶ 26-28.

{¶6} Regarding Appellant's second assignment, this court stated:

In camera interviews with children are confidential and not to be disclosed to the parents. *Chapman v. Chapman*, 2007-Ohio-2968, 2007 WL 1721462, ¶ 26 (2nd Dist.). Parents do not have the right of access to the sealed transcript of the in camera interview between the children and the trial court. *See Lawson v. Lawson*, 2013-Ohio-4687, 2013 WL 5761520, ¶ 57 (5th Dist.).

The recorded statement at issue, characterized by the trial court as a 30-minute monologue of Appellant, was not disclosed to Appellant nor introduced or admitted into evidence during the hearings. Rather, the minor child requested at the last in camera interview that the trial court and the GAL listen to the audio recording as support for her concerns with visiting her father. The trial court considered the recording as evidence of Appellant's conduct during a visitation with his daughter.

Problematically, the content of the audio recording was controverted by Appellant as he testified at the April 5, 2024 hearing that he did not know what conversation was recorded, did not know the date of the recording, and did not even know what the court was referring to. Appellant was first made aware of the recording's existence at this time and had no opportunity

to examine it or present any evidence or argument in his defense. *See In re Adoption of C.L.T.,* 2012-Ohio-5706, 2012 WL 6061705, ¶ 19 (8th Dist.), citing *Child Care Provider Certification Dept. v. Harris*, 2003-Ohio-6500, 2003 WL 22862894, ¶ 15 (8th Dist.) (Trial court's judgment was reversed because it did not afford the party an opportunity to present a defense to the evidence relied on against her). The GAL found it unusual that the minor child recorded the conversation and made no comment to her father.

While the trial court could consider the minor child's wishes expressed during the in camera interview, it could not "accept or consider" the "recorded statement" presented by the minor child that purports to set forth her concerns regarding parenting time or visitation with her father based on the facts presented in this case. *See* R.C. 3109.051(C).

*Facemyer* at ¶ 34-37.

{¶7} In accordance with our remand, the trial court held hearings on April 29, 2025 and on May 8, 2025.

{¶8} At the April 29, 2025 hearing, Appellee and Attorney Edward Colon (the former GAL) testified.

{¶9} Appellee indicated the minor child is a straight-A student. The minor child is involved in marching band, church groups, National Honor Society, runs cross country for school, and spends time with friends. The minor child babysits and dog watches as her employment. Appellee testified the minor child stopped seeing Appellant pursuant to the court order suspending visitation. Since the suspension, Appellee has seen a positive change in the minor child's behavior. The minor child appears less anxious, laughs more, is more outgoing, and has involved herself in more school and community activities. Appellee testified that when the minor child was visiting with Appellant, prior to going on the visits, the minor child would cry and become anxious. However, Appellee still encouraged those visits at that time. Appellee has concerns for the minor child's wellbeing if visitations with Appellant were to begin again due to the minor child's high levels of stress and anxiety exhibited before and after visits.

{¶10} The former GAL testified that he has not been actively involved with the parties or the minor child since the conclusion of the previous court hearing. The GAL indicated that at the prior hearing, he recommended visitation with Appellant. However, now upon reflection, the GAL testified that he may not have been focused on the best interest of the child. During the time he was active with this case, the GAL tried to help Appellant change his ways with the minor child. The GAL indicated Appellant has a very strong personality and thinks he is always right. The GAL tried having Appellant take responsibility with respect to how his behavior was affecting the minor child. However, the GAL testified that Appellant did not take responsibility for his behavior.

{¶11} At the May 8, 2025 hearing, E.F. testified.

{¶12} E.F. stopped visiting Appellant when she reached the age of 18. E.F. testified she was very unhappy visiting Appellant. She felt pressure from Appellant during her application process for college. Appellant pressured her to apply to certain schools and did not consider her wishes or opinions on where she wished to attend. E.F. said Appellant pretended to be her and applied to a school in her name. Appellant's actions upset E.F. causing her to experience a great deal of stress and angst.

{¶13} E.F. testified that Appellant talked about Appellee being the reason that she and the minor child do not want to visit with him and discussed parental alienation. E.F. stated Appellant would talk about Appellee to her and the minor child making negative allegations about Appellee's mental health. E.F. said Appellant would read court documents to her and the minor child regarding visitation. E.F. testified that Appellee encouraged visits with Appellant. However, E.F. does not visit with Appellant because of his behavior.

{¶14} During past visits with Appellant, E.F. testified the minor child would get very quiet and isolate herself by staying in her room. E.F. indicated the interaction between the minor child and Appellant could get sharp. Appellant would yell at the minor child, causing her to completely shut down and cry. E.F. is concerned for the minor child during any visits with Appellant.

{¶15} The trial court also conducted a fourth in-camera interview with the minor child on May 8, 2025. The court stated:

[The minor child] is a straight A student, a member of National Honor Society, works, engages in school activities and is involved in her church and community. [The minor child] was articulate and able to express her thoughts and feelings. The Court finds that [the minor child] has sufficient reasoning ability to express her wishes and concerns with respect to companionship with her parents. The Court does not find that any special circumstances exist to disregard or not consider the child's wishes in determining allocation of parental rights and companionship in this case. The Court does find that it is in the minor child's best interest to consider and determine the child's wishes and concerns in this matter.

The Court finds that the minor child experiences great distress during visits with Father and that as a result she isolates herself in her room to avoid conflict with Father. The Court further finds that Father's behavior has negatively impacted his relationship with [the minor child] and his older daughter [E.F.]. The Court finds that [the minor child] has high anxiety and concern regarding spending time with Father and that since companionship has ceased that [the minor child] is more relaxed, less anxious, and no longer feels targeted by Father's behavior toward her.

The Court finds that [the minor child's] mental health is at risk through interaction and contact with Father.

The Court finds that the conflict, strife and stress experienced by [the minor child] during visitation with Father has been ongoing and has increased as [the minor child] and her sister have matured and engaged in decision making regarding their respective involvement in activities, educational studies and choices that are inconsistent with Father's choices for them.

(7/30/2025 Judgment Entry, p. 3).

{¶16} Following the hearings, on July 30, 2025, the trial court terminated Appellant's parenting time with the minor child. Specifically, the court stated:

Case No. 25 MA 0081

As required by O.R.C. 3109.051(D)(1-15) the Court has considered the prior interaction and interrelationship with the child's parent, siblings and other persons and finds that the minor child, Mother and her sibling have a good relationship with each other. That the minor child and Father's relationship has deteriorated over time and is now causing [the minor child] great stress and anxiety and that just thinking about visitation with Father results in high anxiety and stress. Further, when visiting [the minor child] has felt the need to self-isolate. The Court has considered the schedules of all, but the evidence presented was specific to the child's schedule, not the Parties. The Court has considered the age of [the minor child], seventeen years (17 yrs.) as well as [the minor child's] adjustment to home, school and community. [The minor child] is well adjusted and comfortable in Mother's home and in school and is actively engaged in her church community. [The minor child] is not well adjusted in Father's home and does not engage with Father or others while in the home but instead isolates herself. The Court has considered the wishes of [the minor child] as expressed in the in camera as well as the health and safety of [the minor child]. Further, the Court has considered the amount of time spent with siblings, her older sister, who is in college. The Court has considered the mental health of all parties and no mental health issues for either parent was presented for consideration. Although [the minor child] is not currently in counseling, credible evidence was presented that [the minor child] experiences great anxiety and stress when visiting with Father and that thinking about visits with Father causes [the minor child] great distress. The Court has considered each parent's willingness to reschedule missed parenting time to facilitate the other parent's visitation and clearly both parents want to spend time with [the minor child] and the Court is aware through testimony that Father has expressed to both daughters his belief that Mother is alienating him for them however, no evidence was presented to support parental alienation and the only evidence presented was that Mother encourages the daughters' relationship with Father. The Court is concerned with Father's negative

remarks about Mother to the children and clearly these comments have had a negative impact on the children. The Court has considered the behavior of parents regarding any willful denial of parental rights and finds that both parents have followed the previous court order regarding Father's visitation. Neither Party has criminal convictions to consider, and neither is planning on relocating out of state. Factors (12) and (15) do not apply and the Court has considered any other factors in the minor child's best interest.

The Court has further considered case law requiring extraordinary circumstances be demonstrated by clear and convincing evidence before the court can suspend or terminate a parent's companionship with their minor child. The Court has also considered the minor child's fundamental right to visits with a nonresidential parent. Based upon the evidence presented and the in camera hearing with the minor child, the Court finds by clear and convincing evidence that visitation with Father would cause harm to the minor child and further based upon the aforementioned factors in O.R.C. 3109.051(D)(1-15) the Court finds that it is in the minor child's best interest that Plaintiff/Father's visitation be suspended. .

(7/30/2025 Judgment Entry, p. 4-5).

{¶17} Appellant filed the instant appeal, Case No. 25 MA 0081. In his Praecipe, Statement and Notice, Appellant requested that the record on appeal include a complete transcript pursuant to App.R. 9(B) and provided instructions to the Clerk of Courts for transmission of the complete record. Subsequently, the Clerk of Courts filed a Notice of Record on Appeal and Notice of Supplemental Record on Appeal which verified that the complete record was transmitted to this court. Appellant raises a single assignment of error for our review.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND THUS ABUSED ITS DISCRETION TO THE MATERIAL PREJUDICE OF GREGORY BY TERMINATING GREGORY'S VISITATION RIGHTS,**

Case No. 25 MA 0081

**WHERE NO EXTRAORDINARY CIRCUMSTANCES WERE SPECIFICALLY IDENTIFIED, NOR PRESENT AS A MATTER OF LAW.**

**{¶18}** In his sole assignment of error, Appellant argues the trial court abused its discretion in terminating his visitation rights with the minor child because no extraordinary circumstances were identified nor present.

Modification [and termination, *see Sirons v. Stewart*, 1994 WL 73346 (2nd Dist.)] of visitation rights is left to the sound discretion of the trial court. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 45, 706 N.E.2d 1218. . . . [An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.]

Pursuant to R.C. 3109.051(D), in determining parenting time matters under R.C. 3109.051, the court shall consider all of the following factors: (1) the prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity; (2) the geographical location of the residence of each parent and the distance between those residences; (3) the child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (5) the child's adjustment to home, school, and community; (6) any wishes and concerns of the child expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; (11) prior convictions for certain offenses or acts resulting in abuse or neglect; (12) (applies only when person other than a parent seeks visitation); (13) whether the residential parent has continuously and willfully denied parenting time rights; (14) whether either parent has established a

residence or is planning to establish a residence outside this state; (15) (applies only where person other than parent seeks visitation); (16) any other factor in the best interest of the child. R.C. 3109.051(D).

Generally, the trial court looks only to the factors enumerated in R.C. 3109.051(D) and determines if modification of visitation is in the best interest of the child. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 45, 706 N.E.2d 1218. However, in some cases, the foregoing statute does not stand in isolation. *In re Kaiser,* 7th Dist. No. 04 CO 9, 2004–Ohio–7208, ¶ 10. It must be read and interpreted in conjunction with other factors derived from caselaw to protect against infringement upon an individual's constitutional rights. *Id.*

This court has specifically held that "[t]he nonresidential parent has a fundamental and natural right to visitation." *Anderson v. Anderson* (2002), 147 Ohio App.3d 513, 2002–Ohio–1156, 771 N.E.2d 303, ¶ 22 (7th Dist.), citing *Johntonny v. Malliski* (1990), 67 Ohio App.3d 709, 588 N.E.2d 200, and *Pettry v. Pettry* (1984), 20 Ohio App.3d 350, 486 N.E.2d 213. "The child also has a fundamental right to visitation with the nonresidential parent." *Id.,* citing *Porter v. Porter* (1971), 25 Ohio St.2d 123, 54 O.O. 260, 267 N.E.2d 299, paragraph three of the syllabus.

Concerning this fundamental right of the nonresidential parent to visitation with their child, this court has also noted that the right should be denied only under extraordinary circumstances. *Hoppel v. Hoppel,* 7th Dist. No. 03 CO 56, 2004–Ohio–1574, ¶ 44, citing *Pettry, supra,* paragraph one of the syllabus. The burden of proof is on the one contesting visitation to demonstrate extraordinary circumstances by clear and convincing evidence. *Pettry,* 20 Ohio App.3d at 352–353, 486 N.E.2d 213.

*Pettry* identified two extraordinary circumstances that would qualify: (1) if the noncustodial parent was unfit; or (2) if visitation would cause harm to the child. Another court has held that it would be an extraordinary

circumstance if the noncustodial parent were imprisoned for a term of years for a crime of violence. *In re Hall* (1989), 65 Ohio App.3d 88, 90, 582 N.E.2d 1055. The examples listed in *Pettry* and *Hall* are not meant to provide an exclusive list of possible extraordinary circumstances. *Hoppel, supra* (involving nonresidential parent's conviction for sexual battery against subject child's stepsister). Once the custodial parent proves the existence of an extraordinary circumstance, the burden shifts back to the noncustodial parent to prove that any visitation would be in the best interests of the child. *Id.*

. . .

[W]e find that when a trial court terminates a nonresidential parent's right of visitation the court must make a finding in its judgment entry that there was clear and convincing evidence of extraordinary circumstances justifying termination of those rights.

*Dubec v. Pochiro*, 2010-Ohio-1293, ¶ 21-26, 31 (7th Dist.); *see also In re T.M.M.*, 2017-Ohio-9219, ¶ 44 (7th Dist.), citing *Dubec*.

{¶19} Again, in Appellant's prior appeal, this court stated:

[T]he trial court reviewed the minor child's best interests under the factors enumerated in R.C. 3109.051(D) in its judgment entry, and concluded it was in the minor child's best interest to terminate Appellant's visitation. However, the court did not make the required initial finding that there was clear and convincing evidence of extraordinary circumstances that would justify terminating Appellant's visitation rights. *See Dubec*, 2010-Ohio-1293, ¶ 26 (7th Dist.). The trial court skipped that step and instead limited its review to the best interest of the child factors.

Although the directive may be procedural rather than substantive, on remand, should the trial court again decide to terminate Appellant's visitation rights with the minor child, before doing so, the trial court, in its

judgment entry, shall make the required initial finding that there is clear and convincing evidence of extraordinary circumstances that would justify such termination.

*Facemyer*, 2025-Ohio-205, at ¶ 27-28 (7th Dist.).

**{¶20}** Upon review in the instant appeal, the trial court, in accordance with this court's remand, made the required initial finding in its July 30, 2025 judgment entry, following hearings on April 29, 2025 and May 8, 2025, as well as following the fourth in-camera interview with the minor child, that there is clear and convincing evidence of extraordinary circumstances that would justify terminating Appellant's visitation rights, namely that visitation with Appellant would cause harm to the minor child. *See Pettry*, 20 Ohio App.3d 350 (1984); *Dubec*, 2010-Ohio-1293, at ¶ 26 (7th Dist.). Specifically, as stated, the trial court held:

> The Court has further considered case law requiring extraordinary circumstances be demonstrated by clear and convincing evidence before the court can suspend or terminate a parent's companionship with their minor child. The Court has also considered the minor child's fundamental right to visits with a nonresidential parent. Based upon the evidence presented and the in camera hearing with the minor child, *the Court finds by clear and convincing evidence that visitation with Father would cause harm to the minor child* and further based upon the aforementioned factors in O.R.C. 3109.051(D)(1-15) the Court finds that it is in the minor child's best interest that Plaintiff/Father's visitation be suspended.

(Emphasis added). (7/30/2025 Judgment Entry, p. 5).

**{¶21}** "Harm" is defined as: "Injury, loss, damage; material or tangible detriment." *Black's Law Dictionary* (12th Ed. 2024). Anxiety is a common form of mental and emotional suffering and falls into the category of psychological harm. *See* Bayefsky, *Psychological Harm and Constitutional Standing*, 81 Brook.L.Rev. 1555, 1578 (2016). The trial court found, and the record establishes, that the minor child suffered high anxiety, i.e., harm, prior to and following her visits with Appellant, leading her to self-isolate.

Case No. 25 MA 0081

{¶22} In addition, the trial court again reviewed the minor child's best interests under the factors enumerated in R.C. 3109.051(D) in its July 30, 2025 judgment entry, following this court's remand, and concluded it was in the minor child's best interest to terminate Appellant's visitation. Specifically, as stated, the trial court held:

As required by O.R.C. 3109.051(D)(1-15) the Court has considered the prior interaction and interrelationship with the child's parent, siblings and other persons and finds that the minor child, Mother and her sibling have a good relationship with each other. That the minor child and Father's relationship has deteriorated over time and is now causing [the minor child] great stress and anxiety and that just thinking about visitation with Father results in high anxiety and stress. Further, when visiting [the minor child] has felt the need to self-isolate. The Court has considered the schedules of all, but the evidence presented was specific to the child's schedule, not the Parties. The Court has considered the age of [the minor child], seventeen years (17 yrs.) as well as [the minor child's] adjustment to home, school and community. [The minor child] is well adjusted and comfortable in Mother's home and in school and is actively engaged in her church community. [The minor child] is not well adjusted in Father's home and does not engage with Father or others while in the home but instead isolates herself. The Court has considered the wishes of [the minor child] as expressed in the in camera as well as the health and safety of [the minor child]. Further, the Court has considered the amount of time spent with siblings, her older sister, who is in college. The Court has considered the mental health of all parties and no mental health issues for either parent was presented for consideration. Although [the minor child] is not currently in counseling, credible evidence was presented that [the minor child] experiences great anxiety and stress when visiting with Father and that thinking about visits with Father causes [the minor child] great distress. The Court has considered each parent's willingness to reschedule missed parenting time to facilitate the other parent's visitation and clearly both parents want to spend time with [the minor child] and the Court is aware through testimony that Father has

expressed to both daughters his belief that Mother is alienating him for them however, no evidence was presented to support parental alienation and the only evidence presented was that Mother encourages the daughters' relationship with Father. The Court is concerned with Father's negative remarks about Mother to the children and clearly these comments have had a negative impact on the children. The Court has considered the behavior of parents regarding any willful denial of parental rights and finds that both parents have followed the previous court order regarding Father's visitation. Neither Party has criminal convictions to consider, and neither is planning on relocating out of state. Factors (12) and (15) do not apply and the Court has considered any other factors in the minor child's best interest.

(7/30/2025 Judgment Entry, p. 4-5); *see* R.C. 3109.051(D)(1-16).

**{¶23}** Accordingly, because the trial court found clear and convincing evidence of extraordinary circumstances that would justify terminating Appellant's visitation rights, namely that visitation with Appellant would cause harm to the minor child, and reviewed the minor child's best interests under the factors enumerated in R.C. 3109.051(D) in its July 30, 2025 judgment entry, following this court's remand, the court did not abuse its discretion in terminating Appellant's visitation rights with the minor child.

## CONCLUSION

**{¶24}** For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The July 30, 2025 judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, terminating Appellant's parenting time with the minor child, following a remand by this court in *Facemyer*, 2025-Ohio-205 (7th Dist.), is affirmed.

Robb, J., concurs.

Hanni, J., concurs.

Case No. 25 MA 0081

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**